RAPP INSURANCE AGENCY, INC., Plaintiff-Appellant, v. DAVID W.K. BALDREE, Defendant-Appellee.

Fifth District   No. 5—92—0218

Opinion filed August 6, 1992.

WELCH, J., dissenting.

Crowder & Scoggins, Ltd., of Columbia (Mark S. Rohr and Floyd E. Crowder, of counsel), for appellant.

Baker, Hayes & Kloess, of Belleville (Harold G. Baker, Jr., and Daniel J. Hayes, of counsel), for appellee.

JUSTICE CHAPMAN delivered the opinion of the court:

Plaintiff, Rapp Insurance, seeks a preliminary injunction to enjoin its former employee, David Baldree, from transacting any business with plaintiff's customers and from using confidential information Baldree obtained on customers while working for the plaintiff. The trial court granted plaintiff a temporary restraining order but denied it a preliminary injunction. Plaintiff appeals. We affirm.

Plaintiff is a general insurance agency dealing in both personal and commercial accounts. In December 1988, plaintiff hired defend-

ant, David Baldree, to solicit and service new insurance accounts. Defendant signed an employment contract which stated:

> "(5) In the event this agreement is terminated by the Employer, Employee hereby covenants and agrees with the Employer that he or she will not for a period of three (3) years from the date of such discharge, transact any business with any (individual) persons and/or corporate-commercial accounts and/or Association and its member accounts doing business with the Employer at the time of such termination without first obtaining the written consent of the Employer."

An identical clause followed which applied in the event of a voluntary termination on the part of the employee. Another clause provided:

> "(2) Employee shall receive as compensation such salary and wages as shall be agreed upon between Employer and Employee from time to time in exchange for performing the duties outlined in Paragraph 1 hereof and in consideration of the covenants and/or non-privacy agreement in Paragraphs 5 and 6 hereof."

At the end of 1991, plaintiff reduced Baldree's compensation, and he became dissatisfied with the arrangement. Defendant admittedly copied Rapp Insurance files which he had compiled on his customers while working for Rapp. On February 9, 1992, plaintiff had a meeting with defendant in an attempt to retain defendant as an employee and to address his dissatisfaction with the new compensation agreement. During that meeting defendant stated that he had obtained a "better deal" with another agency. Defendant also asked for time to discuss his options with his wife and told Rapp that he would notify it by the following Friday on his final decision. Defendant then sent a letter dated February 5, 1992, to plaintiff in which he demanded a restoration of his original compensation and stated that a failure by plaintiff to respond to the letter within 10 days of its mailing would be deemed a breach of their written contract. Defendant did not return to work.

On February 13, 1992, plaintiff's attorney delivered a letter to defendant stating that plaintiff considered defendant to have terminated his employment. The letter further stated that if defendant contended otherwise he should respond within seven days or plaintiff would terminate his employment.

On February 14, 1992, plaintiff filed its complaint requesting a temporary restraining order and a preliminary injunction. The court granted the temporary restraining order preventing defendant from

using the allegedly confidential insurance files and from transacting any business with any of plaintiff's customers. The order was set to expire on February 24, 1992, at which time a hearing on the preliminary injunction would be heard. Plaintiff's motion for preliminary injunction was heard on February 24, 1992, and denied by an order filed February 27, 1992. Plaintiff filed a notice of interlocutory appeal on March 24, 1992.

■ The issue before this court is whether the circuit court's denial of the preliminary injunction was contrary to the manifest weight of the evidence. In order to prevail on a motion for a preliminary injunction, a plaintiff must prove that: (1) a clearly ascertained right or interest exists which needs protection; (2) irreparable injury will occur without the protection of an injunction; (3) the remedy at law is inadequate; and (4) there is a likelihood of success on the merits of the case. *Southern Illinois Medical Business Associates v. Camillo* (1989), 190 Ill. App. 3d 664, 671, 546 N.E.2d 1059, 1065; *Lincoln Towers Insurance Agency v. Farrell* (1981), 99 Ill. App. 3d 353, 355, 425 N.E.2d 1034, 1036.

The party seeking a preliminary injunction must raise a fair question as to the existence of the right claimed and establish that it probably will be entitled to the requested relief if it proves its allegations. (*Lincoln Towers*, 99 Ill. App. 3d at 355, 425 N.E.2d at 1036.) The role of the reviewing court is to determine whether the trial court's findings are contrary to the manifest weight of the evidence and to reverse the findings only upon such showing. (*Millard Maintenance Service Co. v. Bernero* (1990), 207 Ill. App. 3d 736, 743-44, 566 N.E.2d 379, 383.) We affirm.

There were, in fact, two preliminary injunctions requested by the plaintiff. The first sought to enjoin defendant from using plaintiff's proprietary business information (*i.e.*, customer files), and the second was to enjoin defendant from transacting any business with plaintiff's customers as per the employment contract. The trial court denied the plaintiff's requests without specific comment.

■ We first address the trial court's refusal to restrain defendant from transacting any business with plaintiff's customers based on the employment contract signed by the defendant with Rapp. The enforceability of a restrictive covenant is a question of law to be carefully scrutinized by the courts because such covenants operate as partial restraints of trade. (*Reinhardt Printing Co. v. Feld* (1986), 142 Ill. App. 3d 9, 15, 490 N.E.2d 1302, 1306-07.) A restrictive covenant may be held enforceable only if the time and territorial limitations are reasonably necessary to protect a legitimate

business interest of the employer. (*Reinhardt*, 142 Ill. App. 3d at 15, 490 N.E.2d at 1307.) Plaintiff must therefore first establish that a legitimate business interest was threatened. In doing so, plaintiff must show injury to its legitimate business interests separate and distinct from defendant's breach of the covenant to secure enforcement thereof, or such covenant will be deemed an unenforceable attempt to prevent competition *per se. Reinhardt*, 142 Ill. App. 3d at 15, 490 N.E.2d at 1307.

■ Ordinarily an employer has no proprietary interest in its clients; however, such an interest may be found for purposes of enforcing a covenant not to compete: (1) where, by the nature of the business, plaintiff has a near-permanent relationship with its customers and but for his or her employment, defendant would not have had contact with them; or (2) where the former employee learned trade secrets or acquired other confidential information while in plaintiff's employ and subsequently attempted to use it for his own benefit. *Camillo*, 190 Ill. App. 3d at 673, 546 N.E.2d at 1065; *Reinhardt*, 142 Ill. App. 3d at 15-16, 490 N.E.2d at 1307.

■ Some of the factors to be considered in determining whether a near-permanent relationship exists include the time, cost, and difficulty involved in developing and maintaining the clientele, the parties' intention to remain affiliated for an indefinite period, and the continuity and duration of the relationship. *A.B. Dick Co. v. American Pro-Tech* (1987), 159 Ill. App. 3d 786, 793, 514 N.E.2d 45, 49; *Reinhardt*, 142 Ill. App. 3d at 16, 490 N.E.2d at 1307.

As concerns the time, continuity and duration factors of the relationships, we believe that the nature of most general insurance policies is somewhat transient. Granted, many such relationships endure over lengthy periods of time; however, most are easily cancelled within relatively short time periods and depend on constant periodic renewals. (See *Camillo*, 190 Ill. App. 3d at 674, 546 N.E.2d at 1066.) The evidence was undisputed that the customer files taken by defendant were those of his own customers. As such they could not have exceeded three years in duration when defendant left Rapp. We cannot say that such relationships were near-permanent.

■ Contrary to plaintiff's argument, the mere potential to become a long-standing customer is not sufficient. As regards the remainder of Rapp's customers, we again emphasize the transient nature of insurance policies in general. It was uncontested that insurance customers are frequently approached by competitors and that the customers willingly give the competitor information regard-

ing their premiums in hopes of obtaining a better deal. Plaintiff has also failed to demonstrate any substantial cost or difficulties in developing or maintaining the clientele. *Camillo*, 190 Ill. App. 3d at 674, 546 N.E.2d at 1066.

As most of the clients, according to testimony, were brought in via "cold calls," we cannot say that defendant would not have had contact with them but for his employment with plaintiff, since most of these customers could be found in the phone book and randomly contacted by any insurance agent.

We also do not conclude that the information in the customer files taken by the defendant contained trade secrets or confidential information. A trade secret has been defined as "a plan or process, tool, mechanism, compound, or informational data utilized by a person in his business operations and known only to him and such limited other persons to whom it may be necessary to confide it." (*Reinhardt*, 142 Ill. App. 3d at 17, 490 N.E.2d at 1308.) Again, it was uncontested that the files defendant copied were those of his own customers, accounts he had established during his three-year tenure. Defendant could easily have contacted his former customers and obtained from them most, if not all, of the information contained in their files. Various employees of plaintiff had access to the same information, and plaintiff made little effort to guard the secrecy of the information other than the employment contract itself. As has already been stated, insurance customers may be targeted or contacted randomly by any given insurance salesman for any company and, more often than not, will voluntarily disclose information about their policies in the hopes of obtaining better deals. This is the nature of competition. Rapp wants this information, which may be liberally distributed by its very own customers to competing agents, to be classified, in the case of David K. Baldree, as a trade secret or confidential information which would prohibit him from transacting business with any of Rapp's customers. The information is out there to be found by any persistent agent. It is neither a secret nor confidential.

Thus, finding no permanent customer relationship or trade secret/confidential information involved, we cannot say that plaintiff has demonstrated a proprietary business interest such as to warrant an enforcement of a covenant not to compete.

Concerning the first requested preliminary injunction seeking to enjoin defendant from using plaintiff's proprietary business information (*i.e.*, the customer files), we have already determined that

these files contained no trade secret or information of a confidential nature which would warrant the reversal of the trial court's ruling.

We, therefore, cannot say that the trial court's findings were contrary to the manifest weight of the evidence and, therefore, affirm.

Affirmed.

GOLDENHERSH, P.J., concurs.

JUSTICE WELCH, dissenting:

I respectfully dissent. The majority found that plaintiff insurance agency had no proprietary interest in its clients for purposes of enforcing the covenant not to compete against defendant because it did not have a near-permanent relationship with its customers and because the information in the customer files taken by defendant did not contain trade secrets or confidential information. I believe that both such findings are against the manifest weight of the evidence.

As the majority notes, an employer may be found to have a proprietary interest in its clients where, by the nature of the business, plaintiff has a near-permanent relationship with its customers and but for his or her employment, defendant would not have had contact with them. (*Southern Illinois Medical Business Associates v. Camillo* (1989), 190 Ill. App. 3d 664, 673, 546 N.E.2d 1059, 1065.) I would first note that the majority ignored the evidence that but for defendant's employment with plaintiff agency, he would not have had contact with plaintiff's clients. The evidence was clear that defendant had brought no accounts with him to the agency when he was first employed there; indeed, defendant had had no prior experience in the insurance industry. Plaintiff also incurred expenses of approximately $5,500 in sending defendant to licensing school to secure the necessary license to sell insurance in the State of Illinois and to a series of extended information classes. Moreover, it cannot be disputed that defendant was hired, at least with respect to the first three years of his employment, to secure customers for the agency, not for himself on a commission basis, and that, accordingly, defendant was paid on a salary basis.

With regard to the near-permanent relationship factors, the majority makes a generalization with respect to the insurance industry, that because insurance policies are easily cancelled and depend on constant periodic renewal, the nature of most general insurance policies is transient. It is apparent that the majority based this determi-

nation upon an assumption that the only files defendant was copying before he left the agency were the accounts which he had developed in the three years he was with the agency. The evidence indicates, however, that other files had been tampered with and that the agency had some 600 outstanding customer files, creating the inference that defendant was also interested in pirating other customers for the new agency by which he was to become employed.

Moreover, no one factor is to be given greater weight, and the factors enunciated in the Illinois cases cited by the majority must be balanced. (*Camillo*, 190 Ill. App. 3d at 674, 546 N.E.2d at 1065.) It is well established that the amount of time and money it takes for an employer to develop a clientele is an indicator of how long the firm and its clients intend to remain affiliated. (*Millard Maintenance Service Co. v. Bernero* (1990), 207 Ill. App. 3d 736, 747-48, 566 N.E.2d 379, 386.) The evidence at the hearing on the preliminary injunction indicated that plaintiff agency had been in existence since 1892 and that the agency had a retention rate of 75% to 80% on its customer policies. I also note that the new agency by which defendant had become employed was a competitor, located in the same town as plaintiff agency. In addition, the majority cites the *Camillo* case for the proposition that because the insurance contract is easily cancelled and depends on constant periodic renewal, the relationship between plaintiff and its customers is transient. I note, however, that in *Camillo*, plaintiff's potential customers changed laboratory service providers constantly, that defendant was well-known in the industry as a skilled phlebotomist, and that the customers defendant was able to solicit during his employment were procured not because of defendant's association with plaintiff but rather through defendant's own efforts in association with plaintiff. In contrast, defendant in the instant case would not have had contact with plaintiff's customers but for his education, training and association with plaintiff's well-established insurance agency.

I also disagree with the majority's conclusion that the information in the customer files taken by defendant did not constitute a trade secret or confidential information. The majority again emphasizes that defendant only copied information from his own account files and could easily have duplicated this information by contacting the customer and asking for it. I do not believe that the evidence of the extent of defendant's information gathering was as limited as the majority concludes. In any event, a restrictive covenant will be enforced where the former employee acquires confidential information while in plaintiff's employ and subsequently attempts to use it for his or her

own benefit. (*A.B. Dick Co. v. American Pro-Tech* (1987), 159 Ill. App. 3d 786, 792, 514 N.E.2d 45, 48.) The manager of plaintiff agency testified that the agency files are confidential because the information contained in the files would give the competitor the upper hand, *i.e.*, they would know the pricing they had to beat to take the account away from plaintiff. The evidence also left no doubt, in my estimation, that defendant's intent in copying the files was to use this information for his own benefit at his new employment. Although the majority also emphasized that plaintiff made little effort to guard the secrecy of the information located in the customer files, I would note that an employee breaches his confidential relationship with his employer where he acts in a manner inconsistent with his employer's interest during his employment in that he surreptitiously copies or memorizes trade secret information for use after his termination in the solicitation of his employer's customers or utilizes information in his possession to develop a product to compete with his employer's product while still in his employ. (*Lincoln Towers Insurance Agency v. Farrell* (1981), 99 Ill. App. 3d 353, 358-59, 425 N.E.2d 1034, 1038.) The evidence was clear that defendant copied customer files which contained the agency's "book of business," including the name of the client, how much his premium was, when the coverage was due and other information necessary to write the coverage. The evidence was also clear that defendant intended to use this information in pursuit of his career in the insurance business. I believe a finding that the information taken by defendant from his employer was not confidential was clearly against the manifest weight of the evidence.

A party who seeks a preliminary injunction must establish that a certain and clearly ascertained right needs protection, irreparable injury will occur without the injunction, no adequate remedy at law exists, and that there is a probability of success on the merits. (*A.B. Dick*, 159 Ill. App. 3d at 791, 514 N.E.2d at 48.) Further, to establish a probability of success on the merits, the petitioner need only raise a fair question as to the existence of the right claimed and show that he will probably be entitled to injunctive relief if he proves his allegations. (*A.B. Dick*, 159 Ill. App. 3d at 791, 514 N.E.2d at 48.) I believe plaintiff established a proprietary right that needs protection, that irreparable injury would occur without the injunction and that no adequate remedy at law exists. I also believe that plaintiff raised a fair question as to the existence of a right needing protection. I therefore would hold that plaintiff agency was entitled to a preliminary injunction.