LYLE R. JAGER AGENCY, INC., Plaintiff-Appellee, v. GARY STEWARD, Defendant-Appellant.

Third District No. 3—93—0466

Opinion filed December 9, 1993.

632

David L. Cover, Ltd., of Peoria (David L. Cover, of counsel), for appellant.

Eastman & Kerr, of Kewanee (Tym Kerr, of counsel), for appellee.

JUSTICE BARRY delivered the opinion of the court:

Defendant Gary Steward appeals a preliminary injunction entered by the circuit court of Henry County, enjoining defendant from soliciting business from certain customers of his former employer, the Lyle R. Jager Agency, Inc.

The plaintiff in this case, Lyle R. Jager Agency, Inc., is an insurance agency which is in the business of selling insurance policies to both private individuals and businesses. In March 1989, the plaintiff employed defendant without a written employment agreement and the defendant began selling insurance policies for the plaintiff.

On January 1, 1991, plaintiff and defendant entered into a written employment agreement which contained the following clause:

"Employee agrees that he will not at anytime, while he is in the employ of the Employer or within two years after leaving said employment, for himself or any other person, persons or company, call upon, solicit, negotiate, arrange, provide, or sell insurance to any person or persons who shall have been clients or customers of the Employer ***."

Thereafter, defendant continued to work for plaintiff selling insurance policies until he resigned on March 20, 1993. Plaintiff initiated this action by filing a complaint on April 7, 1993, alleging that the defendant copied plaintiff's confidential files and solicited clients of the plaintiff in violation of the contract. Plaintiff sought an injunction enjoining defendant from contacting any clients of the plaintiff. Plaintiff also filed a motion for a temporary restraining order which was granted on April 7, 1993.

On April 13, 1993, the defendant filed a "Motion to Strike Plaintiff's Complaint and Dismiss Action and to Vacate Temporary Restraining Order." In support of the motion, the defendant filed a memorandum of law, an affidavit and counteraffidavit, and a list purporting to separate the clients of the defendant from the plaintiff's clients. Defendant further filed an answer and affirmative defenses and a "Response to Order to Show Cause." The trial court lifted the temporary restraining order on April 13, denied the defendant's motion and held a bench trial on April 29, 1993. The trial court entered its memorandum of opinion on May 20, 1993, granting a preliminary injunction against the defendant. The injunction prohibited the defendant from contacting plaintiff's customers, *except* the customers that had followed the defendant from his former employer, Country Companies, to the Jager Agency.

In this appeal the defendant contends that the trial court's grant of injunctive relief was improper, and the restrictive covenant was unenforceable because: (1) plaintiff does not have a protectable interest in its customers, (2) the trial court's finding that the plaintiff had a protectable interest in its customer files is against the manifest weight of the evidence, and (3) the restrictive covenant was not ancillary to a main employment contract and was not supported by consideration.

■ The threshold issue we will first address is defendant's assertion that the restrictive covenant at issue is unenforceable due to a lack of consideration. Defendant argues that because part of the agreement between plaintiff and defendant was oral, the agreement

was not an employment agreement, and that plaintiff gave no adequate consideration to support the contract. First, the written 1991 agreement which the defendant signed states:

"(1) *Employment*

The Employer employs the Employee and the Employee accepts employment upon certain terms and conditions agreed upon orally between the parties and upon the terms and conditions in this Agreement

(2) *Term*

The term of this Agreement shall begin on the day and year first written above and shall terminate two years after the employment of the Employee."

Further, the defendant testified that terms such as commission rates were stated orally by the employer. Thus, obviously the parties intended to enter into an employment agreement. Further, Illinois case law clearly establishes that continued employment constitutes sufficient consideration to support a post-employment covenant not to compete. (*Millard Maintenance Service Co. v. Bernero* (1990), 207 Ill. App. 3d 736, 745, 566 N.E.2d 379, 384; *McRand, Inc. v. van Beelen* (1985), 138 Ill. App. 3d 1045, 1055, 486 N.E.2d 1306, 1313.) The defendant signed the agreement in January 1991. Plaintiff continued to employ the defendant until the defendant left his employment with plaintiff on March 20, 1993, more than two years after the agreement was signed. Thus, we find that the circuit court's finding that the continued employment was sufficient consideration to support the valid employment agreement and that there was an enforceable employment contract was not against the manifest weight of the evidence.

■ A party seeking a preliminary injunction must demonstrate that the party has a clear interest that ought to be protected; that there is no adequate remedy at law; that the party will suffer irreparable harm if the injunction is denied; and that there is a reasonable likelihood of success on the merits. (*Rapp Insurance Agency v. Baldtree* (1992), 231 Ill. App. 3d 1038, 1041, 597 N.E.2d 938; *Millard*, 207 Ill. App. 3d at 743, 566 N.E.2d at 383.) Defendant contends that the trial court erred by finding that the plaintiff had a protectable interest in its customers to justify enforcement of the restrictive covenant. We first note that the decision whether or not to grant injunctive relief is within the sound discretion of the trial court, and the trial court's decision will not be disturbed unless such findings were contrary to the manifest weight of the evidence. (*Millard*, 207 Ill. App. 3d at 743, 566 N.E.2d at 383; *McRand, Inc.*,

138 Ill. App. 3d at 1050-51, 486 N.E.2d at 1311.) Also, the enforceability of a restrictive covenant is a question of law which must be carefully scrutinized because such covenants operate as a partial restraint on trade. *Rapp*, 231 Ill. App. 3d at 1041, 597 N.E.2d at 938; *Reinhardt Printing Co. v. Feld* (1986), 142 Ill. App. 3d 9, 15, 490 N.E.2d 1302, 1306-07.

■ To be enforceable, a post-employment covenant must be reasonably necessary to protect the employer's business from competition which would be "commonly regarded as improper or unfair." (*A.B. Dick Co. v. American Pro-Tech* (1987), 159 Ill. App. 3d 786, 792, 514 N.E.2d 45, 48.) The plaintiff must establish a legitimate business interest requiring protection. (See *Rapp*, 231 Ill. App. 3d at 1042, 597 N.E.2d at 938; *Millard*, 207 Ill. App. 3d at 744, 566 N.E.2d at 384.) These determinations depend on the facts and circumstances of each individual case. (*McRand, Inc.*, 138 Ill. App. 3d at 1051, 486 N.E.2d at 1311.) An employer has a protectable interest in its customers when: (1) the employer has a "near permanent" relationship with its customers and but for the employment, the employee would not have had contact with the customers, or (2) the employee obtained trade secrets or other confidential information while in plaintiff's employ, and subsequently attempted to use it for his or her own benefit. (*Rapp*, 231 Ill. App. 3d at 1042, 597 N.E.2d at 939; *Millard*, 207 Ill. App. 3d at 744, 566 N.E.2d at 385.) In determining whether a near-permanent relationship existed between an employer and its customers, a court may consider the following factors:

> "(1) the number of years the employer required to develop the clientele, (2) the amount of money the employer invested in developing the clientele, (3) the degree of difficulty in developing the clientele, *** (6) the length of time the customers have been associated with the employer, and (7) the continuity of the employer-customer relationship." (*A.B. Dick Co.*, 159 Ill. App. 3d at 793, 514 N.E.2d at 49.)

Further, the amount of time and money it takes for an employer to develop a clientele is an indicator of how long the employer and its clients intend to remain affiliated. *Millard*, 207 Ill. App. 3d at 747-48, 566 N.E.2d at 386.

■ Applying the above principles, we find that the trial court correctly found that the Jager Agency had a near-permanent relationship with its customers. Jager Agency vice-president James Grier testified that he considered customers that have been with Jager Agency for two to three years or more long-term customers.

Randall Swenson, president and chief operating officer of Affiliated Insurance Consultants of Burr Ridge, Illinois, testified that in the area of commercial insurance, an average line of business would be three to five years, while personal lines of insurance might last six or seven years. Testimony at trial indicates that 75% of Jager Agency's clients have been retained for nine years and that 90% of Jager Agency's business is renewed every year. It is also important, as plaintiff notes, that due to the nature of the insurance industry, an agency's customers are its assets. In fact, testimony at trial established that the customers of an insurance agency are its primary assets, which are considered when valuating the agency. Mr. Grier testified that it is important to maintain customers because an insurance business is "referred to as a snowball that you keep rolling in the snow," and the goal is "to write business today and to continue writing it next year and the year after that." Furthermore, testimony at trial indicates that although the insurance industry is a very competitive industry, the plaintiff's business grew from between $8 and $10 million to approximately $14 million since 1984. Thus, most of Jager's clients are long-term customers and it took Jager many years to establish its current clientele in a competitive industry. The defendant emphasizes that the clients at issue in this case have only been affiliated with the plaintiff for a maximum of four years, his term of employment with the plaintiff agency. We believe that because the testimony indicates that a business relationship in the insurance industry lasts between two and five years or more and 90% of plaintiff's clients are renewed each year, the nature of plaintiff's insurance business dictates that a near-permanent relationship had developed between the plaintiff and the clients the defendant solicited during his employment with the plaintiff.

The defendant claims that the plaintiff expended little effort and money to acquire the clients he solicited during the employment relationship, maintained little personal contact with these clients and that the plaintiff had limited knowledge of its clients. The defendant asserts that he expended great efforts to acquire the clients and maintained constant personal contact with them. What the defendant apparently fails to understand is that as the employee of the plaintiff, he was the agent of the plaintiff, and his efforts were on behalf of the plaintiff. Further, the defendant acquired knowledge of *plaintiff's* clients as an agent of the plaintiff, and through its employees, the plaintiff compiled information about its clients which it stored in the agency files, some of which the defendant

deemed valuable enough to copy. The plaintiff paid the defendant a total of approximately $120,000 in 1991 and 1992 to acquire, maintain and service these clients for the plaintiff, not for himself. Furthermore, the defendant testified that the plaintiff paid him travel and entertainment expenses until 1991 and, thereafter, travel expenses until January of 1992. The record also indicates that the defendant was paid a 40% commission rate on each renewal of a client's business. The effort, time and money the plaintiff expended to develop its client files and retain the clients at issue in this case demonstrate that the plaintiff intended to continue the relationship with these clients for a long time. See *Millard*, 207 Ill. App. 3d at 747-48, 566 N.E.2d at 386.

In light of the foregoing, we find that the plaintiff had a near-permanent relationship with the customers solicited by the defendant during his four-year employment with plaintiff, as well as with its customers generally. Obviously, plaintiff invested much time and financial resources paying its employees, including the defendant, to develop the plaintiff's clientele to its current level in a competitive industry. Furthermore, 75% of the plaintiff's clients have been with plaintiff for approximately nine years. Although the defendant argues that the trial court did not consider the seven factors set forth above, we find that the court's statement that "the seven point test is helpful in making the 'near permanent' determination, but *** cannot be considered as a black and white list of requirements," indicates that the court did consider the factors. In sum, we find the trial court's conclusion that the plaintiff did have a protectable "near permanent" relationship with its customers was not against the manifest weight of the evidence.

■ We next address the trial court's finding that "but for" his employment for the plaintiff, the defendant would not have had contact with the plaintiff's customers. We agree with the trial court. Defendant contends that he could have sold insurance to the plaintiff's customers through agencies other than Jager, and therefore, he could have contacted the customers notwithstanding his employment with Jager. We note that the defendant did come to the Jager agency with some experience in the insurance field and knowledge of the trucking industry. However, we believe it is speculation to assert that the defendant could have sold insurance to the plaintiff's customers through other agencies. Further, we do not agree with the defendant's assertion, quite simply, because the argument that an employee could have contacted his employer's clients had he worked for any of the employer's competitors could be

asserted with respect to nearly every competitive sales enterprise. Also, the record indicates that 77% of the commissions the defendant produced at Jager agency were based on commercial business clients. Further, the defendant's testimony indicates that the defendant wrote substantially less commercial insurance while working for his previous employer and that he would not have been approached by certain commercial clients while working for his previous employer. Consequently, it is reasonable for the trial court to conclude that the defendant would not have had contact with such commercial clients, in the context of selling them insurance, but for his employment with the plaintiff. See *LSBZ, Inc. v. Brokis* (1992), 237 Ill. App. 3d 415, 430, 603 N.E.2d 1240, 1250-51.

■ The defendant's suggested application of the "but for" test would have employers, such as Jager, hire inexperienced sales persons with no industry contacts in order to prevent such employees from taking its customers at the end of the employment relationship. Such an application of the "but for" test would yield an inequitable result in this case. We note that the trial court found that the plaintiff had a protectable interest only in the customers that the defendant acquired while at the Jager Agency, and not the customers he brought from his previous employer, Country Companies. Accordingly, the trial court only enjoined the defendant from soliciting those customers acquired while the defendant worked for the plaintiff and permitted the defendant to maintain the clientele he obtained prior to his employment with Jager. Thus, the trial court was fair to the defendant while properly applying the "but for" test. We find the trial court's finding that but for the defendant's employment with Jager, he would not have had contact with Jager's customers is not against the manifest weight of the evidence.

Finally, defendant contends that the trial court erred by finding that the information in Jager's customer files was confidential. The defendant admittedly copied information from some of Jager's customer files. To constitute a trade secret, information must be "utilized by a person in his business operations and known only to him and such limited other persons to whom it may be necessary to confide it." (*Reinhardt Printing Co.*, 142 Ill. App. 3d at 17, 490 N.E.2d at 1308.) A restrictive covenant is enforceable when an employee obtains confidential information through his employment and later attempts to use it for his own benefit. *A.B. Dick Co.*, 159 Ill. App. 3d at 792, 514 N.E.2d at 49.

■ James Grier testified that the customer files contained underwriting information necessary to get a price from the insurance

companies, worksheets on how the insurance company determined the premium and whether the agency reduced commissions in order to get a better price. Mr. Grier further testified that the files are only available to Jager's employees. Randall Swenson testified that the information in the customer files is confidential and would be very valuable to an employee that leaves a company because it would give the ex-employee the "inside scoop" as to what a customer's current insurance rate is and how it was calculated. The defendant argues that the information was not confidential because the information in the customer files could be obtained from the customers themselves, and that names and telephone numbers could be memorized. He further argues that the files were not in locked files and were accessible to anyone *at the agency*. However, when individual pieces of information are compiled and organized at a single location as in this case, it is much more valuable and useful than each piece of information individually. Information in such a compiled form is not easily obtained or accessible to the public, and information such as the worksheets on which the client's premium rates are calculated are not available to the clients. Furthermore, it would be impractical to expect an insurance agency to run its office with all of its customer files locked in file cabinets. Additionally, we note that there was no evidence that the plaintiff's sales representatives kept files separate from the agency's customer files. Consequently, the trial court's finding that the Jager Agency's customer files contained confidential information was not against the manifest weight of the evidence.

The defendant understandably cites *Rapp Insurance Agency v. Baldtree* to argue that the plaintiff has no protectable interest to warrant enforcement of the restrictive covenant. (*Rapp*, 231 Ill. App. 3d at 1044 (Welch, J., dissenting).) In *Rapp*, the plaintiff insurance agency hired the defendant to solicit and service new insurance accounts. The parties signed an employment agreement in which the defendant agreed that upon termination of the employment agreement, he would not "transact any business with any (individual) persons and/or corporate-commercial accounts and/or Association and its member accounts doing business with the employer at the time of such termination" for three years. The insurance agency brought an action for a temporary restraining order and a preliminary injunction to prohibit the employee from using allegedly confidential insurance files and from transacting any business with the insurance agency's customers. The trial court found no permanent customer relationship or trade secret/confidential information

and the Fifth District Appellate Court affirmed. However, we agree with the dissent in the *Rapp* case. The dissent in *Rapp* noted that the plaintiff agency had a retention rate of 75% to 80% (in this case, the record indicates that Jager's retention rate was approximately 90%), and that the defendant went into direct competition with the plaintiff agency. The dissent accordingly found that the agency did have a near-permanent relationship with its customers. The dissent also found that "but for" the defendant's employment with the plaintiff agency, the defendant would not have had contact with plaintiff's customers. The dissent further found that the information in the customer files constituted confidential information, because it would "give the competitor the upper hand *** to take the account away from plaintiff." (231 Ill. App. 3d at 1046.) We believe the dissent's analysis applicable to the facts in the case at hand. In the present case, the trial court achieved an equitable result by allowing the defendant to solicit the customers he brought to Jager from his previous employer, while prohibiting him from leaving his employment with Jager and immediately soliciting the customers he serviced while employed by Jager.

We therefore affirm the trial court's findings that (1) the plaintiff had a near-permanent relationship with its customers and that but for defendant's employment with plaintiff, he would not have had contact with plaintiff's customers, (2) plaintiff's customer files contained confidential information, and (3) the restrictive covenant was enforceable. We conclude that these findings were not contrary to the manifest weight of the evidence and, therefore, the trial court did not abuse its discretion. The defendant had a protectable interest and the court properly entered the preliminary injunction.

Accordingly, the judgment of the circuit court of Henry County is affirmed.

Affirmed.

McCUSKEY, P.J., and BRESLIN, J., concur.