SUNBELT RENTALS, INC., Plaintiff-Appellee, v. NEIL N. EHLERS III *et al.*, Defendants-Appellants.

Fourth District    No. 4—09—0290

Opinion filed September 23, 2009.

Kevin J. Lorenz (argued) and Michelle M. Cain, both of McMahon Berger, P.C., of St. Louis, Missouri, for appellant Midwest Aerials & Equipment, Inc.

Douglas M. Chalmers (argued), of Douglas M. Chalmers, P.C., of Chicago, for appellant Neil N. Ehlers III.

Joel W. Rice (argued) and Brian K. LaFratta, both of Fisher & Phillips, LLP, of Chicago, for appellee.

JUSTICE STEIGMANN delivered the opinion of the court:

In February 2009, plaintiff, Sunbelt Rentals, Inc., sued defendants, Neil N. Ehlers III, Sunbelt's former employee, and Midwest Aerials & Equipment, Inc., Ehlers' new employer, seeking, in pertinent part, preliminary and permanent injunctive relief. Specifically, Sunbelt claimed that (1) Ehlers violated the restrictive covenants of his employment agreement with Sunbelt when he accepted Midwest's employment offer and (2) Midwest tortiously interfered with Sunbelt's employment agreement with Ehlers. The trial court later granted Sunbelt's motion for a preliminary injunction, enjoining Ehlers and Midwest from violating the restrictive covenants of Ehlers' employment agreement with Sunbelt.

Ehlers and Midwest appeal, arguing that the trial court abused its discretion by issuing a preliminary injunction because (1) the court failed to follow controlling precedent and (2) Sunbelt did not have a "legitimate business interest" sufficient to support the imposition of a preliminary injunction. In addition, Ehlers also argues that the restrictive covenants in his employment agreement with Sunbelt were overbroad and unenforceable. Because we (1) reject the "legitimate-business-interest" test and (2) conclude that the restrictive covenants in Ehlers' employment agreement were reasonable as to time and territory, we affirm.

## I. BACKGROUND

### A. Ehlers' Employment With Sunbelt

In May 2003, Ehlers was offered, and he accepted, a sales representative position with Sunbelt. Sunbelt engaged in the business

of renting and selling industrial equipment to commercial and residential customers in 400 nationwide branches, including Bloomington and Champaign. As a Sunbelt sales representative, Ehlers was responsible for (1) developing and maintaining a customer base with construction, agricultural, and industrial clients and (2) all aspects of the client relationship, including sales, rentals, negotiations, scheduling, delivery, and billing.

In June 2003, Ehlers entered into a written employment agreement with Sunbelt, which contained, in pertinent part, the following restrictive covenants:

"5.2 During the term of this [a]gree-mended [*sic*] and for a period of one \*\*\* year after the date of the expiration or termination of this [a]greement for any reason (the '[r]estrictive [p]eriod'), [Ehlers] shall not directly or indirectly:
\*\*\*

(ii) provide or solicit the provision of products or services, similar to those provided by [Sunbelt] at the '[d]esignated [s]tores' (as defined below), to any person or entity who purchased or leased products or services from [Sunbelt] at any time during the [12] calendar months immediately preceding the termination or expiration of this [a]greement for any reason and for or with whom [Ehlers] had contact, responsibility[,] or access to [c]onfidential [i]nformation related to such person or entity; provided, however, the restriction of this subsection \*\*\* shall be limited in scope to the '[t]erritory' (as defined below) and to any office, store[,] or other place of business in which \*\*\* [Ehlers] has had business contact with such persons or entities during the [12] calendar months immediately preceding the termination or expiration of this [a]greement for any reason.
\*\*\*

(iv) compete with [Sunbelt], its successors[,] and assigns by engaging, directly or indirectly, in the [b]usiness as conducted at the [d]esignated [s]tores or in a business substantially similar to the [b]usiness as conducted at the [d]esignated [s]tores, within the '[t]erritory.' \*\*\*
\*\*\*

(v) provide information to, solicit or sell for, organize or own any interest in (either directly or through any parent, affiliate, or subsidiary corporation, partnership, or other entity), or become employed or engaged by, or act as agent for any person, corporation, or other entity that is directly or indirectly engaged in a business in the '[t]erritory' \*\*\*, which is substantially similar to the [b]usiness as conducted at the [d]esignated [s]tores or competitive with [Sunbelt's] [b]usiness as conducted at the [d]esignated [s]tores \*\*\*.

As used herein, the '[t]erritory' means: the geographical area within a [50-]mile radius of any of [Sunbelt's] stores in which, or in connection with which, [Ehlers] performed or was responsible for performing services at any time during the [12-]month period immediately preceding the termination or expiration of this [a]greement for any reason (the '[d]esignated [s]tores').

5.3 In the event of a breach or threatened breach by [Ehlers] of any of the [restrictive [c]ovenants contained in this [p]aragraph [five], [Sunbelt], in addition to and not in derogation of any other remedies it may have, shall be entitled to any or all of the following remedies:

5.3.1 It is stipulated that a breach by [Ehlers] of the [r]estrictive [c]ovenants would cause irreparable damage to [Sunbelt]; [Sunbelt], in addition to any other rights or remedies which [it] may have, shall be entitled to an injunction restraining [Ehlers] from violating or continuing any violation of such [r]estrictive [c]ovenants; such right to obtain injunctive relief may be exercised, at the option of [Sunbelt], concurrently with, prior to, after, or in lieu of, the exercise of any other rights or remedies which [Sunbelt] may have as a result of any such breach or threatened breach ***."

(Emphasis omitted.)

Ehlers performed his sales representative duties for Sunbelt at its Bloomington branch until March 2008, at which time Sunbelt transferred him to its Champaign branch, where Ehlers continued to perform his sales responsibilities.

## B. Ehlers' Employment With Midwest

In early January 2009, Ehlers responded to an employment advertisement from Midwest, which rented and sold aerial work platforms to industrial and construction customers. Shortly thereafter, Ehlers accepted Midwest's offer to work as a sales representative in its Bloomington office. On January 16, 2009, Ehlers tendered his written resignation to Sunbelt but did not provide a reason for his departure. That same day, Sunbelt accepted Ehlers' resignation and terminated his employment.

On January 20, 2009, after determining that Ehlers had accepted a sales position with Midwest, Sunbelt, through its corporate counsel, sent Ehlers a letter requesting that he "cease and desist" violating the terms of the restrictive covenants in his employment contract with Sunbelt. That same day, Sunbelt's counsel also sent a copy of the "cease and desist" letter to Midwest, which Sunbelt considered a direct competitor. Shortly thereafter, Sunbelt's Champaign branch manager saw Ehlers deliver industrial equipment to a Sunbelt client on Midwest's behalf.

## C. The Trial Court's Determination

In February 2009, Sunbelt sued Ehlers and Midwest seeking, in pertinent part, preliminary and permanent injunctive relief. That same day, Sunbelt also filed a motion for a temporary restraining order under section 11—101 of the Code of Civil Procedure (Civil Code) (735 ILCS 5/11—101 (West 2008)), seeking to enjoin (1) Ehlers from violating the restrictive covenants of his employment agreement and (2) Midwest from tortiously interfering with its employment agreement with Ehlers.

During a hearing later that month on Sunbelt's motion for a temporary restraining order, the trial court requested and the parties agreed to treat Sunbelt's motion as a motion for a preliminary injunction under section 11—102 of the Civil Code (735 ILCS 5/11—102 (West 2008)). In subsequently granting Sunbelt a preliminary injunction, the court, relying on the supreme court's decision in *Mohanty v. St. John Heart Clinic, S.C.*, 225 Ill. 2d 52, 866 N.E.2d 85 (2006), found that the time-and-territory terms of the restrictive covenants in Sunbelt's employment agreement with Ehlers were reasonable. The court then enjoined Ehlers and Midwest from violating the restrictive covenants of Ehlers' employment agreement with Sunbelt.

In so finding, the trial court recognized the "legitimate-business-interest" test this court set forth in *Springfield Rare Coin Galleries, Inc. v. Mileham*, 250 Ill. App. 3d 922, 929-30, 620 N.E.2d 479, 485 (1993), but did not specifically apply that test because it further found that the "legitimate-business-interest" test had been encompassed by the time-and-territory reasonableness test recently used by the supreme court in *Mohanty*.

This appeal followed.

## II. ANALYSIS

### A. The "Legitimate-Business-Interest" Test Is No Longer Valid, if It Ever Was

Ehlers and Midwest argue that the trial court abused its discretion by issuing the preliminary injunction because (1) the court failed to follow controlling precedent and (2) Sunbelt had not demonstrated that it had a legitimate business interest sufficient to support the imposition of a preliminary injunction. Whether the trial court followed controlling precedent is a procedural issue that would not dispose of the legal question before this court—that is, whether the "legitimate-business-interest" test is valid. For the reasons that follow, we conclude that it is not.

### 1. The Preliminary Injunction Requirements and the Standard of Review

"The proof required for issuance of a preliminary injunction requires a plaintiff to show a 'fair question' exists regarding his claimed right, and 'the court should preserve the status quo until the case can be decided on the merits.' " *Lifetec, Inc. v. Edwards*, 377 Ill. App. 3d 260, 268, 880 N.E.2d 188, 195 (2007), quoting *Buzz Barton & Associates, Inc. v. Giannone*, 108 Ill. 2d 373, 382, 483 N.E.2d 1271, 1275 (1985). Generally, a preliminary injunction requires a plaintiff to show, by a preponderance of the evidence, that he "(1) has a clearly ascertainable right needing protection; (2) will suffer irreparable harm without protection; (3) has no adequate remedy at law; and (4) is likely to succeed on the merits." *Lifetec*, 377 Ill. App. 3d at 268, 880 N.E.2d at 195.

A trial court has substantial discretion in deciding whether to grant or deny a preliminary injunction and that determination will not be disturbed on appeal absent an abuse of discretion. *Lifetec*, 377 Ill. App. 3d at 268, 880 N.E.2d at 195. However, whether injunctive relief should issue to enforce a restrictive covenant not to compete in an employment agreement depends upon the validity of the covenant, which is a question of law that this court reviews *de novo*. *Mohanty*, 225 Ill. 2d at 63, 866 N.E.2d at 91.

### 2. Defendants' Claim That the Trial Court Failed To Follow Controlling Precedent

Ehlers and Midwest argue that the trial court abused its discretion by issuing a preliminary injunction because it failed to follow controlling precedent. Specifically, they contend that the court failed to apply the "legitimate-business-interest" test. For the reasons that follow, we disagree and reject the "legitimate-business-interest" test.

#### a. The Origins of the "Legitimate-Business-Interest" Test

The "legitimate-business-interest" test (although not identified by that name) first appeared in the First District Appellate Court's decision in *Nationwide Advertising Service, Inc. v. Kolar*, 28 Ill. App. 3d 671, 673, 329 N.E.2d 300, 301-02 (1975). In that case, an advertising agency sought to enforce a restrictive covenant against its former employee and appealed denial of enforcement, arguing that "under Illinois law an employer such as it had a *legitimate business interest* in its customers which was subject to protection through enforcement of an employee's covenant not to compete." (Emphasis added.) *Kolar*, 28 Ill. App. 3d at 673, 329 N.E.2d at 301. In summarizing the principles that underpinned the appellate court's earlier analysis in the same case (*Nationwide Advertising Service, Inc. v. Kolar*, 14 Ill. App. 3d 522, 302 N.E.2d 734 (1973)), the *Kolar* court wrote as follows:

"[A]n employer's business interest in customers is not always subject to protection through enforcement of an employee's covenant not to compete. Such interest is deemed proprietary and protectable only if certain factors are shown. A covenant not to compete will be enforced if [(1)] the employee acquired confidential information through his employment and subsequently attempted to use it for his own benefit. [Citation.] An employer's interest in its customers also is deemed proprietary if, [(2)] by the nature of the business, the customer relationship is near-permanent and but for his association with plaintiff, defendant would never have had contact with the clients in question. (*Cockerill v. Wilson* (1972), 51 Ill. 2d 179, 281 N.E.2d 648; *Canfield v. Spear* (1969), 44 Ill. 2d 49, 254 N.E.2d 433.)" *Kolar*, 28 Ill. App. 3d at 673, 329 N.E.2d at 301-02.

Although the *Kolar* court cited the supreme court's decisions in *Cockerill* and *Canfield* as authority for the "legitimate-business-interest" test, neither of those cases used that test in the restrictive-covenant analyses they contained. See *Canfield*, 44 Ill. 2d at 50-51, 254 N.E.2d at 434 (stating that in restrictive-covenant cases "where the limitation as to time and territory is not unreasonable, the agreement is valid and enforceable, and relief by injunction is customary and proper"); *Cockerill*, 51 Ill. 2d at 183-84, 281 N.E.2d at 650 ("[c]ovenants *** involving performances of professional services have been held valid and enforceable when the limitations as to time and territory are not unreasonable").

During the more than three decades since the *Kolar* decision, the "legitimate-business-interest" test has been cited in one form or another by all the districts of the Illinois Appellate Court, including this one, when deciding restrictive-covenant cases. See *Office Mates 5, North Shore, Inc. v. Hazen*, 234 Ill. App. 3d 557, 569, 599 N.E.2d 1072, 1080 (1992) (First District); *Dam, Snell & Taveirne, Ltd. v. Verchota*, 324 Ill. App. 3d 146, 151-52, 754 N.E.2d 464, 468-69 (2001) (Second District); *Lyle R. Jager Agency v. Steward*, 253 Ill. App. 3d 631, 636, 625 N.E.2d 397, 400 (1993) (Third District); *Springfield Rare Coin Galleries*, 250 Ill. App. 3d at 929-30, 620 N.E.2d at 485 (Fourth District); *Carter-Shields v. Alton Health Institute*, 317 Ill. App. 3d 260, 268, 739 N.E.2d 569, 575-76 (2000) (Fifth District). Thus, the *Kolar* court's initial analysis has devolved into the "legitimate-business-interest" test, which the Illinois Appellate Court appears to have created "out of whole cloth."

In *Hanchett Paper Co. v. Melchiorre*, 341 Ill. App. 3d 354, 351, 792 N.E. 2d 395, 400 (2003), the Second District explained the "legitimate-business-interest" test as follows:

"A legitimate business interest exists where: (1) because of the nature of the business, the customers' relationships with the

employer are near permanent and the employee would not have had contact with the customers absent the employee's employment; and (2) the employee gained confidential information through his employment that he attempted to use for his own benefit."

However, the Supreme Court of Illinois has never embraced the "legitimate-business-interest" test, and its application by the appellate court is inconsistent with recent supreme court decisions concerning restrictive covenants.

### b. The Supreme Court of Illinois Doctrine Regarding the Enforceability of Restrictive Covenants

#### i. *Early Cases*

The earliest supreme court case dealing with restrictive covenants is *Hursen v. Gavin*, 162 Ill. 377, 44 N.E. 735 (1896), in which the plaintiff, who had been engaged in the livery and undertaking business in Chicago, sued to enforce a restrictive covenant restraining the defendant, his former partner, from engaging in the same business in Chicago for five years. The supreme court affirmed the trial court's grant of the injunction restraining the defendant and explained as follows:

"A contract in restraint of trade is *** total and general, when by it a party binds himself not to carry on his trade or business at all, or not to pursue it within the limits of a particular country or State. Such a general contract in restraint of trade necessarily works an injury to the public at large and to the party himself in the respects indicated, and is, therefore, against public policy.

But a contract, which is only in partial restraint of trade, is valid, provided it is reasonable and has a consideration to support it. [Citations.] The restraint is reasonable, when it is such only as to afford a fair protection to the interests of the party, in whose favor it is imposed. *** A contract in restraint of trade, to be valid, must show that the restraint imposed is partial, reasonable[,] and founded upon a consideration capable of enforcing the agreement. *** Where the restriction embraces too large a territory, it will be unreasonable and void ***. [Citations.]

* * *

*** [The contract in this case was valid and enforceable because it] was only in partial restraint of trade. It was limited in time to the period of five years, and in space to the city of Chicago." *Hursen*, 162 Ill. at 379-82, 44 N.E. at 735-36.

In *Ryan v. Hamilton*, 205 Ill. 191, 197, 68 N.E. 781, 783 (1903), the supreme court reversed the appellate court, upholding the trial

court's grant of an injunction restraining the defendant from practicing general medicine "in or within" eight miles of the village of Viola in Mercer County, explaining as follows:

> "Contracts of this class, where the limitation as to territory is reasonable and there exists a legal consideration for the restraint, are valid and enforceable in equity, and in such cases relief by injunction is customary and proper."

In *Bauer v. Sawyer*, 8 Ill. 2d 351, 354-55, 134 N.E.2d 329, 331 (1956), the supreme court upheld enforcement of another restrictive covenant regarding a former partner who was enjoined from practicing medicine and noted that "[t]he principles governing cases of this kind were stated in *Ryan v. Hamilton*." The *Bauer* court added the following: "In determining whether a restraint is reasonable[,] it is necessary to consider whether enforcement will be injurious to the public or cause undue hardship to the promisor, and whether the restraint imposed is greater than is necessary to protect the promisee." *Bauer*, 8 Ill. 2d at 355, 134 N.E.2d at 331. In making these observations, the supreme court cited to its earlier decision in *Hursen*.

### ii. *The Most Recent Supreme Court Decision Regarding Restrictive Covenants*

In *Mohanty*, the supreme court's most recent decision on the enforceability of a restrictive covenant, a group of physicians filed a declaratory judgment action against their employer, alleging that the restrictive covenants in their employment contracts were void as against public policy and unenforceable. *Mohanty*, 225 Ill. 2d at 58, 866 N.E.2d at 89. The employer counterclaimed for declaratory judgment and injunctive relief, and the supreme court ultimately held that the employer was entitled to a preliminary injunction to enforce the restrictive covenants. *Mohanty*, 225 Ill. 2d at 78-79, 866 N.E.2d at 100. Notably, in reaching its decision, the supreme court made no mention of the "legitimate-business-interest" test, despite over three decades of its use by the appellate court.

Initially, the *Mohanty* court rejected the physicians' contention that restrictive covenants in physician employment contracts should be held void as against public policy in Illinois. The supreme court explained as follows:

> "[W]e note that this court has a long tradition of upholding the right of parties to freely contract. [Citation.] Consequently, our decisions have held that a private contract, or provision therein, will not be declared void as contrary to public policy unless it is ' "clearly contrary to what the constitution, the statutes or the decisions of the courts have declared to be the public policy" ' or it is clearly shown that the contract is ' "manifestly injurious to the

public welfare." ' [Citations.] *** As a result, plaintiffs carry a heavy burden of showing that restrictive covenants in physician employment contracts are against the public policy of this state." *Mohanty*, 225 Ill. 2d at 64-65, 866 N.E.2d at 92-93.

The supreme court later repeated these same criteria when it concluded that "plaintiffs have failed to show that physician restrictive covenants are contrary to the constitution, statutes or judicial decisions of this state. Nor have they shown that these covenants are manifestly injurious to the public welfare." *Mohanty*, 225 Ill. 2d at 69, 866 N.E.2d at 95.

The physicians also challenged the restrictive covenants in their employment contracts as unenforceable "because they [were] unreasonably overbroad in their temporal and activity restrictions." *Mohanty*, 225 Ill. 2d at 75, 866 N.E.2d at 98. The supreme court rejected this claim, explaining as follows:

"As noted earlier in this opinion, this court has a long tradition of upholding covenants not to compete in employment contracts involving the performance of professional services when the limitations as to time and territory are not unreasonable. *Cockerill v. Wilson*, 51 Ill. 2d 179, 183-84[, 281 N.E.2d 648] (1972); *Canfield v. Spear*, 44 Ill. 2d 49[, 254 N.E.2d 433] (1969); *Bauer v. Sawyer*, 8 Ill. 2d 351[, 134 N.E.2d 329] (1956). ' "In determining whether a restraint is reasonable it is necessary to consider whether enforcement will be injurious to the public or cause undue hardship to the promisor, and whether the restraint imposed is greater than is necessary to protect the promisee." ' [Citation.]" *Mohanty*, 225 Ill. 2d at 76, 866 N.E.2d at 98-99.

Consistent with the above criteria, the supreme court considered the parties' evidence to determine whether the limitations set as to time (three years) and territory (a five-mile radius) were unreasonable and concluded that they were not. *Mohanty*, 225 Ill. 2d at 78, 866 N.E.2d at 100.

Thus, the supreme court determined that a restrictive covenant that restrained cardiologists from practicing medicine was enforceable, and the supreme court reached this conclusion without relying upon—or even mentioning—the "legitimate-business-interest" test. See *Lifetec*, 377 Ill. App. 3d at 277-80, 880 N.E.2d at 200-04 (Steigmann, P.J., specially concurring) (where the author of this opinion questioned the validity of the "legitimate-business-interest" test and urged its abandonment by the appellate court). See also *SKF USA, Inc. v. Bjerkness*, No. 08 C 4709, slip op. at 24 n.7 (N.D. Ill. April 24, 2009) (noting this author's special concurrence in *Lifetec*, which called into question the validity of the "legitimate-business-interest" test); *AMFM Broadcasting, Inc. v. Osowiec*, No. 08 C 1519, slip op. at 3 n.2

(N.D. Ill. April 11, 2008) (not reported) (where the Northern District of Illinois applied the "legitimate-business-interest" test to a restrictive covenant case because Illinois courts had yet to act on this author's "well-reasoned approach" urging rejection of the test); *Brown & Brown, Inc. v. Mudron*, 379 Ill. App. 3d 724, 731, 887 N.E.2d 437, 443 (2008) (Schmidt, J., dissenting) (where Justice Schmidt agreed with this author's analysis that the "legitimate-business-interest test 'is no longer valid, if it ever was' ").

■ The lesson of the supreme court's decisions in *Cockerill, Canfield, Bauer, Ryan, Hursen*, and most recently in *Mohanty* is that courts at any level, when presented with the issue of whether a restrictive covenant should be enforced, should evaluate only the time-and-territory restrictions contained therein. If the court determines that they are not unreasonable, then the restrictive covenant should be enforced. Thus, this court need not engage in an additional discussion regarding the application of the "legitimate-business-interest" test because that test constitutes nothing more than a judicial gloss incorrectly applied to this area of law by the appellate court.

Accordingly, because (1) the Supreme Court of Illinois has never embraced the "legitimate-business-interest" test and (2) its application is inconsistent with the supreme court's long history of analysis in restrictive covenant cases, we reject the "legitimate-business-interest" test.

### c. Precedential Authority

In support of their contention that the trial court abused its discretion by failing to apply the "legitimate-business-interest" test, Ehlers and Midwest rely on the supreme court's decision in *In re A.A.*, 181 Ill. 2d 32, 36, 690 N.E.2d 980, 981-82 (1998), for the proposition that a trial court is not free to ignore binding precedent from the appellate court in its own district. We agree that, if applicable, the trial court was obligated to apply the "legitimate-business-interest" test even if the court disagreed that it should apply. See *Gillen v. State Farm Mutual Automobile Insurance Co.*, 215 Ill. 2d 381, 392 n.2, 830 N.E.2d 575, 581 n.2 (2005), quoting *Schiffner v. Motorola, Inc.*, 297 Ill. App. 3d 1099, 1102, 697 N.E.2d 868, 871 (1998) (" *[S]tare decisis* requires courts to follow the decisions of higher courts, but does not bind courts to follow decisions of equal or inferior courts' ").

However, even assuming that Ehlers and Midwest are correct that the trial court was bound by appellate court precedent to apply the "legitimate-business-interest" test and failed to do so, we decline to reach the merits of their argument because, unlike the trial court, this court is not required to follow the decisions of its sister districts or, for

that matter, our own prior decisions. See *O'Casek v. Children's Home & Aid Society of Illinois*, 229 Ill. 2d 421, 440, 892 N.E.2d 994, 1006-07 (2008) ("[T]he opinion of one district, division, or panel of the appellate court is not binding on other districts, divisions, or panels"). Thus, having repudiated the validity of the "legitimate-business-interest" test earlier in this decision—assuming it was ever valid—we need not address the argument of Ehlers and Midwest that the trial court was bound by precedent to apply it in this case. Any error by the trial court in this regard simply no longer matters at this stage of proceedings.

## B. Ehlers' Claim That the Restrictive Covenants Were Overbroad and Unenforceable

■ Ehlers also argues that the restrictive covenants within his employment contract with Sunbelt were overbroad and unenforceable. (We note that Midwest, in its brief to this court, does not make such an argument.) Specifically, Ehlers contends that the restrictive covenants would prohibit him from working for any Midwest city branch—which could stretch as far as Alaska—regardless of his employment position. Essentially, Ehlers asserts that the restrictive covenants in his employment contract would cause him undue hardship. We disagree.

"Where restrictive covenants are ancillary to valid contracts supported by adequate consideration and are reasonable in their terms as to time and territory, such covenants will be enforced by the courts and relief by injunction is customary and proper." *Lifetec*, 377 Ill. App. 3d at 268-69, 880 N.E.2d at 195. In determining whether a restraint is reasonable, a court must (1) consider whether enforcement will be injurious to the public or cause undue hardship to the promisor and (2) whether the restraint imposed is greater than is necessary to protect the promisee. *Mohanty*, 225 Ill. 2d at 76, 866 N.E.2d at 98-99.

Contrary to Ehlers' extraordinary contention, the restrictive covenants in this case merely prohibit Ehlers from being employed by Midwest—or any business in competition with Sunbelt—for one year if he was to be employed in a location that was within 50 miles of any Sunbelt branch where he had worked. Such a restriction is not unreasonable and is consistent with the time-and-territory restrictions in the aforementioned restrictive covenant cases that have previously been found reasonable by the supreme court.

Moreover, to the extent that Ehlers claims that the restrictive covenants in his employment agreement with Sunbelt violated public policy as an unreasonable restraint on trade, we disagree. Public policy concerns are incorporated into the restrictive covenant time-and-territory assessments, which this court has concluded are reasonable.

Here, Ehlers had two options if he thought the restrictive covenants in his employment contract with Sunbelt would cause him undue hardship. He could have (1) opted not to sign the employment agreement or (2) asked Sunbelt to eliminate or modify the terms of the restrictive covenants. By failing to opt for either choice, Ehlers risked the enforcement of such restrictive covenants after he chose to sign the employment agreement. We reject his attempted exercise of a third option—namely, suing to try to undo the contract he signed when, as here, that contract's restrictive covenants are reasonable both as to time and territory.

## III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment.

Affirmed.

McCULLOUGH, P.J., and KNECHT, J., concur.