NO. 4-07-0300          Filed 11/6/07

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

LIFETEC, INC., an Illinois Corporation, ) Appeal from
          Plaintiff-Appellee,            ) Circuit Court of
          v.                             ) Macon County
PETER EDWARDS; CAROL EDWARDS; and        ) No. 06CH20
PATTERSON MEDICAL PRODUCTS, INC., a      )
Michigan Corporation, d/b/a SAMMONS      )
PRESTON ROLYAN,                          )
          Defendants,                    )
          and                            )
PETER EDWARDS; and PATTERSON MEDICAL     )
SUPPLY, INC., a Minnesota Corporation,   ) Honorable
d/b/a SAMMONS PRESTON ROLYAN,            ) Katherine M. McCarthy,
          Defendants-Appellants.         ) Judge Presiding.
_____

JUSTICE KNECHT delivered the opinion of the court:

In January 2006 plaintiff, Lifetec, Inc. (Lifetec),
sued defendant, Peter Edwards, its former employee, for breach of
contract, specifically for breach of three restrictive covenants
contained in the contract. Lifetec also sued Carol Edwards,
Peter's wife, and Patterson Medical Supply, Inc. (Patterson),
Peter's new employer, for tortious interference with contract.
In March 2007, the trial court granted Lifetec's request for a
preliminary injunction, finding sufficient evidence Edwards had
knowledge of confidential client information and Lifetec provided
sufficient evidence presenting a fair question Edwards had
disclosed such confidential information to Patterson for his and
Patterson's benefit. Thus, Lifetec presented a fair question it
had a protectible business interest and, therefore, demonstrated

a likelihood of success on the merits.  In this interlocutory appeal, Edwards claims the trial court abused its discretion because no protectible business interest was demonstrated by Lifetec justifying a preliminary injunction.  We affirm as modified and remand with directions.

I.  BACKGROUND

A.  Uncontroverted Facts

On or before April 1, 1996, Edwards was offered and accepted a position as a sales representative for Lifetec, a dealer of medical devices and products in Illinois, Indiana, and other neighboring states.  On April 2, 1996, Edwards executed a written employment agreement with Lifetec, which contained several postemployment restrictive covenants.  These covenants were a "non[]competition" covenant, a "non[]solicitation" covenant and a "non[]representation" covenant.  They stated, respectively, the following:

> "6.02 Competition.  Employee will not, for a period of twenty-four (24) months after the termination of this Agreement, directly or indirectly, on Employee's own account or in the service of others or through a spouse or affiliate, compete with the Company or engage in the sale and/or lease of the Product or competitive medical devices and/or

- 2 -

products in the Territory. For the purposes of this provision, Product and Territory includes only the Product and Territory assigned to the Employee during the most recent eighteen [(18)] months prior to the termination of this Agreement."

"6.01 Solicitation. Employee will not, for a period of twenty-four (24) months after the termination of this Agreement, directly or indirectly, on Employee's own account or in the service of others or through an affiliate or spouse, engage in the solicitation of purchase orders for, or assist in the sale and/or lease of, the Product or competitive medical devices and/or products in the Territory. For the purposes of this provision, Product and Territory includes only the Product and Territory assigned to the Employee during the most recent eighteen [(18)] months prior to the termination of this Agreement."

"8.01 Duty Not to Represent. Employee agrees that during the period of this Agreement and for twenty-four (24) months thereafter, he will not, either directly or indi-

- 3 -

rectly, become employed by or act as a distributor or sales representative for any manufacturer for whom Employer acted as a distributor or sales representative during the prior twelve (12) months nor will Employee accept any employment with any distributor or sales representative that sells medical and exercise products manufactured by any manufacturer for whom Employer acted as a distributor or sales representative within the prior twelve (12) months."

"Product" was defined as "those medical devices and products which the employee is authorized to sell in the Territory" and "are listed in the Product Schedule" attached to the contract.

Edwards was employed with Lifetec for almost 10 years. During this time, he was promoted and his compensation package increased. Edwards never sought to renegotiate the employment agreement to remove the covenants.

During the spring of 2005, while actively employed by Lifetec, Edwards sought employment with Patterson, a competitor of Lifetec with a nationwide business. Edwards knew when he interviewed that the position with Patterson would involve selling the same products as Lifetec to the same customers and in the same territory. At Patterson's request, Edwards brought a

copy of his employment agreement with Lifetec with him to the interview with Patterson and left a copy there. Patterson's representatives assured Edwards he would be taken care of if he were sued by Lifetec.

In July 2005, Edwards was offered a position with Patterson, which he quickly accepted. On July 18, 2005, Edwards submitted his letter of resignation to Lifetec, which was accepted on July 22. In the letter he was not forthcoming about his new employment with Patterson but instead stated he was leaving due to personal problems and the desire to further develop and market his own medical product. Edwards stated he knew the real reason for his resignation would upset Lifetec's representatives. Edwards started working for Patterson in August 2005. It was not until several months later Edwards admitted to Michael Christoi, president of Lifetec, he was now working for Patterson.

## B. Lawsuit Initiated

On January 18, 2006, Lifetec sued Edwards for breach of contract and on January 25, 2006, filed a motion for preliminary injunction. At the time of the issuance of the preliminary injunction, Edwards admits he was still selling products for Patterson competitive with products he sold for Lifetec in the territory he serviced for Lifetec and actually serviced the same customers he served in the area subject to the restrictions in

his employment agreement.

The motion for preliminary injunction sought a preliminary injunction barring Edwards from violating the covenants in his employment agreement with Lifetec and specifically ordering him to (1) cease working for Patterson and (2) cease competing with Lifetec and engaging in the solicitation of purchase orders in competition with Lifetec and cease acting as (a) a distributor or sales representative for any manufacturer for which Lifetec acted as a distributor or (b) a sales representative for any manufacturer for which Lifetec acted as a distributor or sales representative during the 12 months prior to Edwards' resignation, all in accord with the covenants in the employment agreement.

## C. Evidentiary Hearings

The trial court heard evidence for three days at trial from September 2006 through November 2006. Christoi testified he started Lifetec in 1983 and it is a small, family-run distributor of medical products, specializing in physical and occupational therapy, schools, long-term care, and orthopedics. Lifetec's major customers are hospitals, nursing homes, private practice clinicians, schools, retirement centers, and orthopedists and podiatrists. Lifetec currently employed 13 employees and generally employed between 10 and 20. The bulk of Lifetec's sales (85% to 95%) came from Illinois, Indiana, and Wisconsin. Christ-

oi described Patterson as Lifetec's largest competitor and both companies market to the same customers. Lifetec usually had about three salespeople working for it at any one time.

Christoi testified that after Edwards left Lifetec, Lifetec suffered a loss of sales in the territory previously served by Edwards. Christoi admitted Edwards was not replaced by a new salesperson but the territory was being served by Christoi himself while he also continued to perform his duties as company president. Lifetec does not have funds with which to participate in marketing activities and so relies heavily on its sales personnel to market its products by direct contact with potential customers.

In his testimony, Edwards identified himself as a rehabilitation sales consultant for Patterson. He is one of 13 salespersons reporting to the Midwest sales director, Angie Cominsky-Wachs. Cominsky-Wachs testified Patterson seeks to establish customer relationships through sales representatives supported by an "extensive catalog"; Christoi also described the catalog as extensive. Edwards testified that, while working for Lifetec, customers would contact him with reference to Patterson-'s catalog to determine if Lifetec could supply a certain product and at what price.

Much of Patterson's business came about through national account contracts with hospital-based and other buying

consortiums where the customers were obligated to buy a certain percentage of their product from Patterson and at a set price. For products sold by Patterson through Edwards, Cominsky-Wachs estimated these national contracts amount to 70% of his sales.

Christoi considered the identities of key customers, listings, ordering patterns, and quote reports, as well as "open quotes," to be "confidential information." Of these, the open quotes were the most important type of information. "Open quotes" consisted of bids provided to customers for purchases the customers were considering making. When Edwards left Lifetec, $1.3 million in open quotes were outstanding in Edwards' Lifetec territory. Christoi admitted open quotes were followed with orders less than half the time. By contrast, Edwards stated while employed with Lifetec he considered himself fortunate to "close" 15% of his open quotes.

Christoi testified only two individuals employed by Lifetec had signed confidentiality agreements with the company. He admitted not all persons acting as sales representatives of Lifetec had executed confidentiality agreements. Lifetec's president, secretary/treasurer, and sales administrator all had access to open-quote reports and none executed a confidentiality agreement. Of those who had not executed confidentiality agreements, these persons were family members of the family that owned Lifetec. Account managers (in-house office-support people)

received open-quote information from sales representatives and they never executed confidentiality agreements. Christoi admitted that after Lifetec provided these quotes to customers, the customers commonly provided Lifetec's quote to other suppliers. Edwards also testified open quotes from other suppliers were generally shared by customers.

Christoi testified Lifetec's pricing for medical equipment is confidential. While Patterson has a published catalog, Lifetec has only a small flyer in regard to basic supplies. The prices for items other than basic supplies were customized and tailored to individual customers and those resulted in the open quotes. The information that went into producing the open quotes was confidential and accessed through password-secured company computer programs. The system was set up with security codes and sales personnel could access only their own accounts. The only persons with open access to the computer systems were Christoi, his wife, and his sister-in-law, each of whom has been a trusted and trustworthy employee of Lifetec for over 20 years.

Edwards had access to this confidential information while employed with Lifetec. He testified he brought no customers with him when he joined Patterson as all Lifetec customers were also customers of Patterson. The industry was very price-driven, and customers purchased from many suppliers depending

upon which offered the lowest prices at any given time for a given item. Edwards further testified contacting former customers would not have made sense once he moved to Patterson because his business there came from Patterson client lists and the bulk of that from national contracts with buying consortiums. Edwards admitted he had some memory of Lifetec open quotes.

Several e-mails Edwards sent to other Patterson employees after he became employed by Patterson were introduced as evidence at trial. Pertinent ones include one dated September 6, 2005, approximately one month after Edwards started employment with Patterson, in which Edwards states "Right now I'm just calling on people I already know and converting." Another, dated that same day, states "It would be very helpful for me to be able to ID these target accounts in case they are budgeting for equipment with competitors." Finally, another e-mail, dated January 23, 2006, from a different sales representative to Cominsky-Wach, states the "Pricing is to keep LifeTec [sic] out."

A great deal of other evidence was presented by Lifetec with the purpose of proving Lifetec had "near-permanent relationships" with its customers. The trial court's finding on this point is not before us in this appeal, and we need not detail it here.

D. Trial Court Order

The trial court entered its order granting most of the

relief sought by Lifetec while preliminarily enjoining Edwards from competing directly with Lifetec in any territory he previously served in for Lifetec for the first 24 months after leaving Lifetec's employ:

"A.  Defendant Edwards is ORDERED not to compete with Lifetec or engage in the sale and/or lease of any product or competitive medical device listed in Exhibit A to the Agreement in the territory assigned to Edwards during the eighteen (18) month period of time prior to the termination of his Agreement for a period of twenty-four (24) months.

B.  Defendant Edwards is ORDERED not to engage in the solicitation of purchase orders for or assist in the sale or lease of any of the products or competitive medical devices listed in Exhibit A of the Agreement within the territory to which he was assigned with Lifetec during the eighteen (18) month period of time prior to the termination of his Agreement.

C.  Defendant Edwards is ORDERED not to act as a distributor or sales representative

for any manufacturer for whom Plaintiff acted as a distributor or sales representative during the twelve (12) months prior to Defendant Edwards' resignation with Lifetec."

The trial court specifically found the e-mail messages presented a fair question that Edwards was using information he gained from his employment at Lifetec to his advantage. The court noted the most troubling piece of evidence was the e-mail early on in his new job in which Edwards stated he was "calling on people I already know and converting." Although Edwards denied this was a reference to Lifetec and was meant to include all competitors, the trial court found a fair question was presented by Lifetec that Edwards was using confidential information "for his own benefit with his new employer." Further, Edwards stated "it would be very helpful for me to able to ID these target accounts in case they are budgeting for equipment with competitors." Edwards admitted he had some memory of pending Lifetec "open quotes" and he would be able to give Patterson a significant competitive advantage by using this confidential information.

The trial court concluded Lifetec presented sufficient evidence presenting a fair question Edwards has disclosed confidential information to his present employer, Patterson, for his own and Patterson's benefit.

This interlocutory appeal followed.

## II. ANALYSIS

Defendants appeal pursuant to Supreme Court Rule 307(a)(1) (188 Ill. 2d R. 307(a)(1)). The only question before us is whether a sufficient showing was made to the trial court to sustain the order granting the relief sought. Postma v. Jack Brown Buick, Inc., 157 Ill. 2d 391, 399, 626 N.E.2d 199, 203 (1993).

### A. Standard of Review

Trial courts have substantial discretion in deciding whether to grant a preliminary injunction (Danville Polyclinic, Ltd. v. Dethmers, 260 Ill. App. 3d 108, 109, 631 N.E.2d 842, 843 (1994)), and the decision of the trial court will not be disturbed on appeal absent an abuse of discretion (Mohanty v. St. John Heart Clinic, S.C., 225 Ill. 2d 52, 63, 866 N.E.2d 85, 91 (2006)). On appeal, the court examines only whether the party seeking the injunction has demonstrated a prima facie case that there is a fair question concerning the existence of claimed rights. Mohanty, 225 Ill. 2d at 62, 866 N.E.2d at 91.

### B. Preliminary Injunction Requirements

The proof required for issuance of a preliminary injunction requires a plaintiff to show a "fair question" exists regarding his claimed right, and "the court should preserve the status quo until the case can be decided on the merits." Buzz

- 13 -

Barton & Associates, Inc. v. Giannone, 108 Ill. 2d 373, 382, 483 N.E.2d 1271, 1275 (1985). As a general rule, a preliminary injunction requires a showing by a preponderance of the evidence (Weitekamp v. Lane, 250 Ill. App. 3d 1017, 1022, 620 N.E.2d 454, 458 (1993)) the plaintiff (1) has a clearly ascertainable right needing protection; (2) will suffer irreparable harm without protection; (3) has no adequate remedy at law; and (4) is likely to succeed on merits. Postma, 157 Ill. 2d at 399, 626 N.E.2d at 204. The trial court should also consider whether the benefits of granting the preliminary injunction exceed the injury to the defendant. Danville, 260 Ill. App. 3d at 111, 631 N.E.2d at 844.

C. Restrictive Covenants in Employment Contracts

Because restrictive covenants in employment agreements are a form of restraint of trade, they are scrutinized carefully to ensure their intended effect is not to prevent competition per se. Gillespie v. Carbondale & Marion Eye Centers, Ltd., 251 Ill. App. 3d 625, 626, 622 N.E.2d 1267, 1269 (1993). Where restrictive covenants are ancillary to valid contracts supported by adequate consideration and are reasonable in their terms as to time and territory, such covenants will be enforced by the courts and relief by injunction is customary and proper. Center for Sight of Central Illinois I, S.C. v. Deranian, 305 Ill. App. 3d 909, 915, 712 N.E.2d 417, 421 (1999).

In determining whether to grant an injunction enforcing

a restrictive covenant, courts look to whether the covenant is reasonable.  <u>Weitekamp</u>, 250 Ill. App. 3d at 1023, 620 N.E.2d at 459.  In determining whether a restrictive covenant is enforceable, courts must determine whether the terms of the agreement are reasonable and necessary to protect a "legitimate business interest" of the plaintiff.  <u>Label Printers v. Pflug</u>, 206 Ill. App. 3d 483, 491, 564 N.E.2d 1382, 1387 (1991).

The reasonableness of the terms of the covenants as to time and territory is not in dispute.  Nor are the facts (1) the territories Edwards was working in for Patterson overlapped the territories he worked in for Lifetec and (2) he worked for Patterson within 24 months of leaving Lifetec.

A "legitimate business interest" is found only where (1) the employee acquired confidential information through his employment with the plaintiff and later attempted to use it for his own gains <u>or</u> (2) by the nature of the plaintiff's business, its customer relationships are near permanent and the employee would not have had contact with the customer absent his employment.  <u>A.J. Dralle, Inc. v. Air Technologies, Inc.</u>, 255 Ill. App. 3d 982, 991, 627 N.E.2d 690, 696-97 (1994).  We need not address the second of these, as Lifetec filed no cross-appeal taking issue with the trial court's ruling on this point.

### D. Employee Acquisition of and Later Attempt To Use Confidential Information for His Own Gain

The issue on appeal is whether Lifetec had  protectible

confidential information that Edwards gained through his employment with the plaintiff and later attempted to use for his own gains. "[C]ustomer information [may] constitute confidential information only when the information has been developed by the plaintiff over a number of years at great expense and kept under tight security." A.J. Dralle, Inc., 255 Ill. App. 3d at 992, 627 N.E.2d at 697. Where such information is known by others in the trade or could be duplicated easily by reference to industry publications or the identity of customers is known because the customers did business with more than one supplier, such information is not protectible. A.J. Dralle, Inc., 255 Ill. App. 3d at 992, 627 N.E.2d at 697.

### E. Sufficiency of Evidence To Meet Confidentiality Prong of Business-Interest Test

Lifetec primarily contends information described as "open quotes" warrants protection as confidential information. When Edwards left Lifetec on July 18, 2005, Lifetec had outstanding $1.3 million in open quotes in the territory serviced by Edwards. Lifetec claims Edwards' access to the open quotes on customized products may have allowed him to undercut those quotes while employed at Patterson. Defendants argue Lifetec offered no proof any of the open quotes outstanding when Edwards left remained in existence as of the date of the order granting the preliminary injunction or that any of the quotes required injunctive relief for the protection of Lifetec.

The general rule in Illinois is as follows: "[W]hile an employee, at the termination of his employment, can take with him general skills and knowledge acquired during the course of his employment, he may not take confidential particularized information disclosed to him during the time the employer-employee relationship existed which are unknown to others in the industry and which give the employer advantage over his competitors." Burt Dickens & Co. v. Bodi, 144 Ill. App. 3d 875, 879, 494 N.E.2d 817, 819 (1986).

While defendants spend a great deal of time arguing the open quotes are available to anyone in the industry once they are given to customers and are, therefore, not confidential information, no attention is paid to the information possessed by Edwards as to how those open quotes are calculated before they are given to the customers. That is where the obvious confidentiality truly lies.

This information is akin to the information as to "markups" which the court found to be confidential in The Agency, Inc. v. Grove, 362 Ill. App. 3d 206, 217, 839 N.E.2d 606, 616 (2005) (markups were the difference between what the plaintiff, a temporary employment agency, paid temporary workers and what was

charged to its clients for the workers; such markups and the reasons therefor would be of value to a competitor). Further, the compilation, generation, and use of information and the circumstances under which the information was maintained are also important in determining confidentiality. "[W]hen individual pieces of information are compiled and organized at a single location as in this case, it is much more valuable and useful than each piece of information individually." Lyle R. Jager Agency, Inc. v. Steward, 253 Ill. App. 3d 631, 640, 625 N.E.2d 397, 402 (1993) (information in a compiled form is not easily obtained or accessible to the public and worksheets on which a client's premiums are calculated are not available to the public). The court in The Agency, Inc. found despite the ease with which the public may acquire information in the plaintiff's client profiles through simple contact with workers placed or the clients themselves, the advantage of the profiles, as in Lyle R. Jager, is the information is gathered in one place. The Agency, Inc., 362 Ill. App. 3d at 219, 839 N.E.2d at 617-18.

The trial court's order stated the "Court concludes that [Edwards'] knowledge of [']open quotes['] pending at the time of his termination from employment with Lifetec is confidential client information." As the trial court noted, not only was Edwards aware of the open-quotes reports but he "would have the necessary information to undercut a bid presented on behalf of

- 18 -

Lifetec." This was the equivalent of information gathered in one place prior to Lifetec making its bids. Edwards had been privy to the information upon which Lifetec relied in making its bids resulting in the open quotes and, thus, he would likely know whether Lifetec would be able to adjust its bid if Patterson underbid Lifetec. Because all of the evidence indicated the medical sales industry was very competitive and the contracts were usually awarded to the lowest bidder, Lifetec necessarily wanted to keep this information confidential. Edward's knowledge of this information could be very damaging to Lifetec if he served the same territory for a competitor as he had for Lifetec.

The evidence was also sufficient to support the trial court's conclusion Lifetec had presented a fair question that Edwards disclosed the information he remembered from his employment to Patterson or used it to his and Patterson's advantage. As the trial court noted, the e-mails were quite telling. Early on in his new job, Edwards stated in an e-mail he was "calling on people I already know <u>and</u> <u>converting</u>." (Emphasis added.) Although Edwards denied this was a reference to Lifetec and was meant to include all competitors, this presents a fair question Edwards was using confidential information for his own benefit with his new employer. Further, in another e-mail, Edwards stated "it would be very helpful for me to able to ID these target accounts in case they are budgeting for equipment with

competitors."  Edwards admitted he had some memory of pending Lifetec "open quotes" and he would be able to give Patterson a significant competitive advantage by using this confidential information.

This evidence is sufficient to present a fair question Lifetec has a protectible business interest in confidential information.  The trial court did not abuse its discretion in granting Lifetec's motion for preliminary injunction and preserving the status quo until the case could be decided on its merits.

### F. Sufficiency of Evidence to Otherwise Merit Preliminary Injunction Issuance

The other criteria for issuing a preliminary injunction are also satisfied.  Defendants argue Lifetec made no effort to establish the existence of any emergency necessary to warrant issuance of preliminary injunction because the business would suffer irreparable harm.  On the effective date of the order, Edwards had been without access to Lifetec information for a period of time in excess of 20 months.  Lifetec offered no evidence any open quote, on which Edwards might have possessed knowledge when he worked for Lifetec, remained open on March 21, 2007.

When the preliminary injunction was entered, Edwards was servicing customers on behalf of Patterson in the area subject to the covenants.  Competition was clearly occurring. Edwards sought employment, marketed products, and represented

Patterson in violation of the covenants.  Lifetec presented sufficient evidence indicating a fair question Edwards disclosed confidential information to Patterson for his own benefit. Christoi testified it lost significant business in the territory previously served by Edwards since he began working for Patterson.

> "[A] legal rule that irreparable injury can be established only by a concrete demonstration *** would make injunctions useless as a practical matter.  If proof of particular injuries could be supplied, then the injury would be reparable by damages; it is precisely the difficulty of pinning down what business has been or will be lost that makes an injury 'irreparable.'  See Hilton v. Braunskill, 481 U.S. 770, 776, 107 S. Ct. 2113, 95 L. Ed. 2d 724 (1987).  Competition changes probabilities ***. ***
>
> Illinois recognizes this. ***  It treats ongoing competition itself as a sufficient basis for relief.  See, e.g., Gold v. Ziff Communications Co., 196 Ill. App. 3d 425, 434, 142 Ill. Dec. 890, 553 N.E.2d 404, 410 (Ill. App. 1 Dist. 1989)('The failure of

- 21 -

plaintiff to show an actual loss is not dispositive'); <u>U-Haul Co. v. Hindahl</u>, 90 Ill. App. 3d 572, 577, 45 Ill. Dec. 854, 413 N.E.-2d 187, 192 (Ill. App. 3 Dist. 1980) ('It is not necessary that a party seeking an injunction show an actual loss of sales before relief will be granted')." <u>Hess Newmark Owens Wolf, Inc. v. Owens</u>, 415 F.3d 630, 632-33 (7th Cir. 2005).

As for an inadequate remedy at law, the harm to Lifetec's ongoing business caused by Edwards's ongoing breaches of the covenants would be difficult, if not impossible, to measure. The only way to minimize the seemingly increasing damages was to require Edwards to comply with the covenants under his employment agreement.

In regard to the element of a likelihood of success on the merits, as noted previously, defendants never argue Edwards was not engaged in actions in violation of the covenants as worded. Rather, their contentions have been the covenants are not enforceable due to lack of a protectible business interest. As we have already noted, where postemployment restrictive covenants are ancillary to valid contracts supported by adequate consideration, and are reasonable in their terms, such covenants will be enforced. <u>Center for Sight of Central Illinois I, S.C.</u>,

- 22 -

305 Ill. App. 3d at 915, 712 N.E.2d at 421.  The covenants in this case are ancillary to an employment agreement, a valid contract supported by consideration.  See Abel v. Fox, 274 Ill. App. 3d 811, 814, 654 N.E.2d 591, 593 (1995) (continued employment is generally sufficient consideration for execution of nonsolicitation covenant).  No one is contesting whether the terms of the agreements are reasonable and necessary to protect a legitimate business interest of the plaintiff, and the trial court has already determined a legitimate business interest exists.  Therefore, the trial court correctly determined plaintiff showed a likelihood of success on the merits, i.e., enforcing the restrictive covenants.

Finally, the trial court balanced the hardships to the parties in granting the preliminary injunction and found no evidence Edwards could not continue to work for Patterson outside of the competing territory.  In fact, the court specifically found the order did not require Edwards to cease employment with Patterson.  He simply could not work in any capacity violating the restrictive covenants.  In addition, no evidence showed Edwards could not work for any other noncompeting company or that he even tried to find a job not violating the restrictive covenants.  Edwards actively sought employment with Patterson while employed by Lifetec in spite of knowledge Patterson sold the same products as Lifetec to the same customers and in the same terri-

- 23 -

tory.  On balance, the evidence is sufficient to support the trial court's finding the benefits to Lifetec exceeded any injury to Edwards.

    G. Further Challenge to Validity of Preliminary Injunction

  1. <u>Alleged</u> <u>Defectiveness</u> <u>for</u> <u>Lack</u> <u>of</u> <u>Detail</u> <u>Required</u> <u>by</u> <u>Section</u> <u>11-101</u> <u>Is</u> <u>a</u> <u>Matter</u> <u>for</u> <u>Clarification,</u> <u>Not</u> <u>Requiring</u> <u>Reversal</u>

       Defendants make two final arguments in regard to the legal validity of the preliminary injunction order.  First, defendants contend the order runs afoul of section 11-101 of the Code of Civil Procedure (Code) (735 ILCS 5/11-101 (West 2006)), which requires:

> "Every order granting an injunction and every restraining order shall set forth the reasons for its entry; shall be specific in terms; shall describe in reasonable detail, <u>and</u> <u>not</u> <u>by</u> <u>reference</u> <u>to</u> <u>the</u> <u>complaint</u> <u>or</u> <u>other</u> <u>document</u>, the act or acts sought to be restrained ***."  (Emphasis added.)

       The order here provided Edwards was not to "engage in the sale and/or lease" or "in the solicitation of purchase orders for or assist in the sale or lease of any product or competitive medical device listed in Exhibit A to the Agreement" nor "act as a distributor or sales representative for any manufacturer for whom Plaintiff acted as a distributor or sales representative during the twelve (12) months prior to Defendant Edwards' resig-

- 24 -

nation." Thus, the order requires, by its terms, a review of an exhibit to the Agreement, a product schedule, setting forth the products from which Edwards' sales efforts are banned. Further, it requires reference to other sources for determining those entities for whom Edwards is barred from acting as sales representative as they are not listed in the order.

While it appears the order does not comply with section 11-101 of the Code, this does not render the order invalid or require reversal. A simple motion for clarification based on the requirements of section 11-101 would have sufficed to correct the deficiencies in the order; this could have been done prior to appeal. While we affirm the trial court's order in granting the preliminary injunction, we remand for the trial court to make these clarifications now.

## 2. <u>Failure To Plead Alleged Misappropriation of Confidential Information No Bar to Relief Granted</u>

Defendants also maintain Lifetec made no assertion in its complaint or in its motion for preliminary injunction any purportedly confidential information was misappropriated warranting injunctive relief. They argue a party is not permitted to state one claim in its complaint and establish a different case by evidence. However, Lifetec never stated a different complaint. Lifetec has consistently sought enforcement of the restrictive covenants in its employment agreement with Edwards. Lifetec properly pled (1) the covenants are valid and enforceable

- 25 -

and (2) Edwards breached them. Evidence of confidentiality of information establishes Lifetec had a legitimate business interest to protect, i.e., it is one type of significant matter supporting enforceability of the restrictive covenants. While actual misappropriation and misuse of confidential information is part of the court's analysis of the imminent threat to Lifetec under preliminary injunction calculus, these facts need not be pled to state a claim for enforcement of the restrictive covenants.

The special concurrence posits the interesting proposition that the "legitimate-business-interest test" is not valid. It also notes our analysis should have ended once we determined the terms of the restrictive covenant were reasonable. The special concurrence is persuasive, but no advocate made the arguments or presented the analysis found in the special concurrence. In short, the issue was not presented. While we may affirm for any reason in the record, if we are to reject three decades of precedent based on an argument never made, perhaps we should wait for the dog to bark.

### III. CONCLUSION

For the foregoing reasons, we affirm the trial court's judgment but remand for clarification of the order granting preliminary injunction in accordance with section 11-101 of the Code (735 ILCS 5/11-101 (West 2006)). In so concluding, we

- 26 -

acknowledge the trial judge's detailed six-page single-spaced memorandum order, which we found most helpful.

Affirmed as modified and cause remanded with directions.

TURNER, J., concurs.

STEIGMANN, P.J., specially concurs.

PRESIDING JUSTICE STEIGMANN, specially concurring:

Although I agree with the result in this case, I specially concur because the majority opinion, in determining the enforceability of this restrictive covenant, uses the "legitimate-business-interest" test that I believe is no longer valid, if it ever was.

## I. THE "LEGITIMATE-BUSINESS-INTEREST" TEST

For over three decades, the Illinois Appellate Court has held that courts will not enforce a restrictive covenant that bars a former employee from competing with his former employer, unless the terms "are reasonable and necessary to protect an employer's legitimate business interests." Hanchett Paper Co. v. Melchiorre, 341 Ill. App. 3d 345, 351, 792 N.E.2d 395, 400 (2003). In Hanchett, the Second District Appellate Court explained this rule as follows:

> "A legitimate business interest exists where:
> (1) because of the nature of the business,
> the customers' relationships with the em-
> ployer are near permanent and the employee
> would not have had contact with the customers
> absent the employee's employment; and (2) the
> employee gained confidential information
> through his employment that he attempted to
> use for his own benefit." Hanchett, 341 Ill.

App. 3d at 351, 792 N.E.2d at 400.

Every district of the appellate court, including this one, has used similar language in restrictive-covenant cases. See Office Mates 5, North Shore, Inc. v. Hazen, 234 Ill. App. 3d 557, 569, 599 N.E.2d 1072, 1080 (1992) (First District); Dam, Snell & Taveirne, Ltd. v. Verchota, 324 Ill. App. 3d 146, 151-52, 754 N.E.2d 464, 468-69 (2001) (Second District); Lyle R. Jager Agency, Inc. v. Steward, 253 Ill. App. 3d 631, 636, 625 N.E.2d 397, 400 (1993) (Third District); Springfield Rare Coin Galleries, Inc. v. Mileham, 250 Ill. App. 3d 922, 929-30, 620 N.E.2d 479, 485 (1993) (Fourth District); Carter-Shields v. Alton Health Institute, 317 Ill. App. 3d 260, 268, 739 N.E.2d 569, 575-76 (2000) (Fifth District). However, the Supreme Court of Illinois has never embraced this test, and its application is inconsistent with recent supreme court decisions concerning restrictive covenants. Accordingly, the test should be abandoned.

II. THE ORIGIN OF THE "LEGITIMATE-BUSINESS-INTEREST" TEST

The "legitimate-business-interest" test (although not identified by that name) first appeared in the First District Appellate Court's decision in Nationwide Advertising Service, Inc. v. Kolar, 28 Ill. App. 3d 671, 673, 329 N.E.2d 300, 301-02 (1975). In that case, an advertising agency sought to enforce a restrictive covenant against its former employee and appealed denial of enforcement, arguing that "under Illinois law an employer such as it had a legitimate business interest in its

- 29 -

customers which was subject to protection through enforcement of an employee's covenant not to compete."  (Emphasis added.) Kolar, 28 Ill. App. 3d at 673, 329 N.E.2d at 301.  In summarizing the principles that underpinned the appellate court's earlier analysis in the same case (Nationwide Advertising Service, Inc. v. Kolar, 14 Ill. App. 3d  522, 302 N.E.2d 734 (1973)), the Kolar court wrote as follows:

> "[A]n employer's business interest in customers is not always subject to protection through enforcement of an employee's covenant not to compete.  Such interest is deemed proprietary and protectable only if certain factors are shown.  A covenant not to compete will be enforced if [(1)] the employee acquired confidential information through his employment and subsequently attempted to use it for his own benefit.  [Citation.]  An employer's interest in its customers also is deemed proprietary if, [(2)] by the nature of the business, the customer relationship is near-permanent and but for his association with plaintiff, defendant would never have had contact with the clients in question. (Cockerill v. Wilson (1972), 51 Ill. 2d 179,

281 N.E.2d 648; Canfield v. Spear (1969), 44
Ill. 2d 49, 254 N.E.2d 433.)" Kolar, 28 Ill.
App. 3d at 673, 329 N.E.2d at 301-02.

Although the Kolar court cites the supreme court's decisions in Cockerill and Canfield as authority for the "legitimate-business-interest" test, neither of those cases used that test in the restrictive-covenant analyses they contained. See Canfield, 44 Ill. 2d at 51, 254 N.E.2d at 434 (stating that in restrictive-covenant cases "where the limitation as to time and territory is not unreasonable, the agreement is valid and enforceable, and relief by injunction is customary and proper"); Cockerill, 51 Ill. 2d at 183-84, 281 N.E.2d at 650-51 ("[c]ovenants *** involving performances of professional services have been held valid and enforceable when the limitations as to time and territory are not unreasonable"). Instead, it appears that the Kolar court's analysis has devolved into the "legitimate-business-interests" test, which the appellate courts have created "out of whole cloth."

For the last 32 years, the "legitimate-business-interest" test has been cited in one form or another by all of the districts of the Illinois Appellate Court when deciding restrictive-covenant cases. Due to the sheer volume of cases appellate courts handle, they are often required to address cases of first impression and must develop the common law and nuanced

- 31 -

analysis.  We appellate judges often endeavor to develop bright-line rules or tests, both to inform our analysis and to assist the bench and bar in future cases.  Nonetheless, good practice requires us from time to time look back to what our supreme court has said, earlier and most recently, to make sure our analyses remain consistent with supreme court doctrine.

### III. SUPREME COURT OF ILLINOIS DOCTRINE REGARDING ENFORCEABILITY OF RESTRICTIVE COVENANTS

### A. Early Cases

The earliest supreme court case dealing with restrictive covenants is <u>Hursen v. Gavin</u>, 162 Ill. 377, 44 N.E. 735 (1896), in which the plaintiff, who had been engaged in the livery and undertaking business in Chicago, sued to enforce a restrictive covenant restraining the defendant, his former partner, from engaging in the same business in Chicago for five years.  The supreme court affirmed the trial court's grant of the injunction restraining the defendant and explained as follows:

> "A contract in restraint of trade is ***
> total and general, when by it a party binds
> himself not to carry on his trade or business
> at all, or not to pursue it within the limits
> of a particular country or State.  Such a
> general contract in restraint of trade neces-
> sarily works an injury to the public at large
> and to the party himself in the respects

indicated, and is, therefore, against public policy.

But a contract, which is only in partial restraint of trade, is valid, provided it is reasonable and has a consideration to support it. [Citations.] The restraint is reasonable, when it is such only as to afford a fair protection to the interests of the party, in whose favor it is imposed. *** A contract in restraint of trade, to be valid, must show that the restraint imposed is partial, reasonable[,] and founded upon a consideration capable of enforcing the agreement. *** Where the restriction embraces too large a territory, it will be unreasonable and void ***. [Citations.]

* * *

***[The contract in this case was valid and enforceable because it] was only in partial restraint of trade. It was limited in time to the period of five years, and in space to the city of Chicago." Hursen, 162 Ill. at 379-82, 44 N.E. 735-36.

In Ryan v. Hamilton, 205 Ill. 191, 197, 68 N.E. 781,

783 (1903), the supreme court reversed the appellate court and upheld the trial court's grant of an injunction restraining the defendant from practicing general medicine "in or within" eight miles of the village of Viola in Mercer County, explaining as follows:

> "Contracts of this class, where the limitation as to territory is reasonable and there exists a legal consideration for the restraint, are valid and enforceable in equity, and in such cases relief by injunction is customary and proper."

In Bauer v. Sawyer, 8 Ill. 2d 351, 354, 134 N.E.2d 329, 331 (1956), the supreme court upheld enforcement of another restrictive covenant regarding a former partner who was enjoined from practicing medicine and noted that "[t]he principles governing cases of this kind were stated in Ryan v. Hamilton."  The Bauer court added the following:  "In determining whether a restraint is reasonable[,] it is necessary to consider whether enforcement will be injurious to the public or cause undue hardship to the promisor, and whether the restraint imposed is greater than is necessary to protect the promisee."  Bauer, 8 Ill. 2d at 355, 134 N.E.2d at 331.  In making these observations, the supreme court cited its earlier decision in Hursen.

B. The Most Recent Supreme Court Decision

- 34 -

The supreme court's most recent decision on the enforceability of a restrictive covenant was Mohanty, 225 Ill. 2d 52, 866 N.E.2d 85.  In Mohanty, a group of physicians filed a declaratory judgment action against their employer, alleging that the restrictive covenants in their employment contracts were void as against public policy and unenforceable.  The employer counterclaimed for declaratory judgment and injunctive relief, and the supreme court ultimately held that the employer was entitled to a preliminary injunction to enforce the restrictive covenants. Mohanty, 225 Ill. 2d at 78, 866 N.E.2d at 100.  Notably, in reaching its decision, the supreme court made no mention of the "legitimate-business-interest" test, despite over three decades of its use by the appellate court.

Initially, the Mohanty court rejected the physicians' contention that restrictive covenants in physician employment contracts should be held void as against public policy in Illinois.  The supreme court explained as follows:

> "[W]e note that this court has a long tradition of upholding the right of parties to freely contract.  [Citation.] Consequently, our decisions have held that a private contract, or provision therein, will not be declared void as contrary to public policy unless it is '"clearly contrary to what the

- 35 -

constitution, the statutes or the decisions
of the courts have declared to be the public
policy"' or it is clearly shown that the
contract is '"manifestly injurious to the
public welfare."' [Citations.]  ***  As a
result, plaintiffs carry a heavy burden of
showing that restrictive covenants in physi-
cian employment contracts are against the
public policy of this state."  Mohanty, 225
Ill. 2d at 64-65, 866 N.E.2d at 92-93.

The supreme court later repeated these same criteria when it
concluded that "plaintiffs have failed to show that physician
restrictive covenants are contrary to the constitution, statutes
or judicial decisions of this state.  Nor have they shown that
these covenants are manifestly injurious to the public welfare."
Mohanty, 225 Ill. 2d at 69, 866 N.E.2d at 95.

The physicians also challenged the restrictive cove-
nants in their employment contracts as unenforceable "because
they [were] unreasonably overbroad in their temporal and activity
restrictions."  Mohanty, 225 Ill. 2d at 75, 866 N.E.2d at 98.
The supreme court rejected this claim, explaining as follows:

"As noted earlier in this opinion, this
court has a long tradition of upholding cove-
nants not to compete in employment contracts

- 36 -

involving the performance of professional services when the limitations as to time and territory are not unreasonable. Cockerill v. Wilson, 51 Ill. 2d 179, 183-84 [, 281 N.E.2d 648] (1972); Canfield v. Spear, 44 Ill. 2d 49[, 254 N.E.2d 433] (1969); Bauer v. Sawyer, 8 Ill. 2d 351[, 134 N.E.2d 329] (1956). '"In determining whether a restraint is reasonable it is necessary to consider whether enforcement will be injurious to the public or cause undue hardship to the promisor, and whether the restraint imposed is greater than is necessary to protect the promisee."' [Citations.]" Mohanty, 225 Ill. 2d at 76, 866 N.E.2d at 98-99.

Consistent with the above criteria, the supreme court considered the parties' evidence to determine whether the limitations set as to time (three years) and territory (a five-mile radius) were unreasonable and concluded that they were not.

Thus, the supreme court determined that a restrictive covenant that restrained cardiologists from practicing medicine was enforceable, and the supreme court reached this conclusion without relying upon--or even mentioning--the "legitimate-business-interest" test. As Sherlock Holmes would observe, this

is the case of the dog that did not bark.

## IV. EPILOGUE

In this case, the parties argue--and the majority opinion discusses--the need for the employer, Lifetec, to overcome the "legitimate-business-interest" test to prevail in its effort to enforce a restrictive covenant against one of its salesmen. Yet, the supreme court in Mohanty enforced a restrictive covenant that undermined the physician/patient relationship without even acknowledging the existence of the "legitimate-business-interest" test. It makes no sense to place a greater burden on employers of salespeople than on employers of physicians when the enforceability of noncompete covenants is at issue. Surely the physician-patient relationship and access to medical care are more societally significant concerns than any concerns related to the relationship between a retailer of medical products and its sales force. I find support for this view in Justice Freeman's partial concurrence in Mohanty, where he wrote, "a strong case exists for abolishing all physician restrictive covenants as being against public policy. However, I agree that this decision is for the General Assembly to make." Mohanty, 225 Ill. 2d at 86, 866 N.E.2d at 104 (Freeman, J., concurring in part and dissenting in part).

The lesson of Mohanty is that courts at any level, when presented with the issue of whether a restrictive covenant should

be enforced, should evaluate <u>only</u> the time and territory restrictions contained therein.  If the court determines that they are not unreasonable, then the restrictive covenant should be enforced.

In this case, the majority opinion notes that "[t]he reasonableness of the terms of the covenants as to time and territory are not in dispute."  Slip op. at 14.  At oral argument, defendants' counsel conceded that the terms of the restrictive covenant were reasonable.  The majority's observation that the reasonableness of the terms of the covenants as to time and territory are not in dispute should have ended our analysis. The employer has no additional burden to prove a "protectible" or "legitimate" business interest to support enforcement.  This court need not engage in an additional discussion regarding the application of the "legitimate-business-interest" test because that test constitutes nothing more than a judicial gloss incorrectly applied to this area of law by the appellate court.  We need not await the supreme court's explicit and emphatic rejection of that test before rejecting it ourselves, especially when, as here, continued fealty to it runs counter to Supreme Court of Illinois doctrine.