NOTICE

Decision filed 08/22/14. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2014 IL App (5th) 130600

NO. 5-13-0600

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| SCHEFFEL FINANCIAL SERVICES, INC., | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Madison County. |
| | ) | |
| v. | ) | No. 13-L-1488 |
| | ) | |
| STEPHEN J. HEIL, | ) | Honorable |
| | ) | Barbara L. Crowder, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE WELCH delivered the judgment of the court, with opinion.

Justices Cates and Schwarm concurred in the judgment and opinion.

**OPINION**

¶ 1    Stephen J. Heil (Heil) appeals from the entry against him, in favor of Scheffel Financial Services, Inc. (Scheffel), of a preliminary injunction enforcing a nonsolicitation clause contained in an employment agreement. The facts and the issues involved in this case are quite complex. We will simplify them as much as possible and set them forth only as necessary for an understanding of our disposition on appeal. The parties and the circuit court are already intimately familiar with those facts and issues.

¶ 2    On August 30, 2013, Scheffel filed in the circuit court of Madison County a three-count complaint against Heil seeking damages for breach of an employment

1

agreement, misappropriation of trade secrets, and tortious interference with contract and business relations. The complaint alleges that Scheffel is in the business of providing independent wealth management services, including investment management, portfolio analysis, financial planning, and other related financial services. Heil had been employed by Scheffel as a senior financial consultant. Prior to beginning employment with Scheffel, Heil had signed an employment agreement which included confidentiality, noncompetition, and nonsolicitation clauses.

¶ 3 On August 30, 2013, Heil left his employment with Scheffel and began similar employment with Morgan Stanley, which Scheffel alleges is a direct market competitor to Scheffel. When he left Scheffel, Heil took with him a list of clients he had serviced at Scheffel and, upon starting employment with Morgan Stanley, Heil immediately solicited these Scheffel clients to follow him to Morgan Stanley. Scheffel alleges that Heil thereby breached his employment agreement with Scheffel, misappropriated Scheffel's trade secrets, and tortiously interfered with Scheffel's business relationships with its clients. The complaint seeks temporary, preliminary, and permanent injunctions against Heil's alleged misconduct, compensatory and punitive damages, interest, and attorney fees and costs.

¶ 4 After an extended hearing, the circuit court of Madison County entered a preliminary injunction against Heil restraining him from any use or disclosure of Scheffel's confidential information, restraining him from any direct or personal solicitation of Scheffel's clients or customers as agreed to in his employment agreement, and ordering him to return to Scheffel any and all client information which he is not

2

authorized to have. It is from the entry of this preliminary injunction that Heil appeals.

¶ 5 The following pertinent facts were adduced at the hearing on Scheffel's motion for a preliminary injunction. Heil is a licensed financial advisor who worked at Scheffel, a corporation whose employees, including Heil, are licensed financial advisors. These financial advisors are registered representatives of LPL Financial (LPL), a registered broker/dealer. As a financial advisory firm, Scheffel is not licensed to buy or sell securities; only a registered broker/dealer can do that. Accordingly, Scheffel's employees, including Heil, were registered representatives of LPL, the registered broker/dealer, who traded securities on behalf of, and as directed by, Heil and the other Scheffel financial advisors. LPL views these financial advisors/registered representatives as independent contractors of LPL. Scheffel views them as employees of Scheffel. LPL trades securities only at the behest of its registered representatives/financial advisors and registered institutions and does not do so on behalf of individual investors. An individual investor would visit one of the financial advisors at Scheffel, who would then, as a registered representative of LPL, direct LPL to purchase or sell securities on behalf of the individual investor. Scheffel attracted these individual investors through marketing efforts, and through the contacts and community involvement of its financial advisors, including Heil. LPL did not market to, or have any relationship with, these individual investors. LPL's only relationship was with its registered representatives, the financial advisors at Scheffel.

¶ 6 Heil began working at Scheffel in April 2002, at which time he signed an employment agreement in which he agreed, among other things, to give two weeks'

3

notice upon voluntary termination. Nevertheless, on the Friday morning before the Labor Day three-day weekend, Heil tendered his resignation to Scheffel, "effective immediately." Immediately thereafter, Heil drove to the offices of Morgan Stanley and began his employment with Morgan Stanley. On that day, he overnight-mailed a solicitation package to former clients of Scheffel inviting them to bring their business to him at Morgan Stanley. He admittedly did this on Friday in hopes of averting any attempt by Scheffel to stop him with a temporary restraining order from soliciting Scheffel's clients.

¶ 7 The employment agreement which Heil had signed contained a nonsolicitation clause: "For a period of five (5) years immediately following the date he/she ceased to be an employee he/she will not directly or indirectly *** solicit clients who were serviced by the Company during the two (2) years immediately prior to the date of this withdrawal, voluntary or involuntary retirement, or termination ***." It is this clause which the circuit court sought to enforce by its preliminary injunction.

¶ 8 Circuit courts have substantial discretion in deciding whether to grant a preliminary injunction, and the decision of the circuit court will not be disturbed on appeal absent an abuse of discretion. *Lifetec, Inc. v. Edwards*, 377 Ill. App. 3d 260, 268 (2007). On appeal, the court examines only whether the party seeking the injunction has demonstrated a *prima facie* case that there is a fair question concerning the existence of claimed rights for which it seeks protection. *Lifetec*, 377 Ill. App. 3d at 268.

¶ 9 On appeal from an order granting or denying a preliminary injunction, controverted facts or the merits of the case are not decided. *Woods v. Patterson Law*

4

*Firm, P.C.*, 381 Ill. App. 3d 989, 993 (2008).  The only question is whether there was a sufficient showing made to the circuit court to sustain its order.  *Carr v. Gateway, Inc.*, 395 Ill. App. 3d 1079, 1084 (2009).  The appeal may not be used to determine the merits of the case.  *Carr*, 395 Ill. App. 3d at 1084.  This is because the purpose of a preliminary injunction is not to determine the controverted rights or decide the merits of the case, but rather, its function is to preserve the rights of the parties or the state of affairs legally existing just prior to the motion for a preliminary injunction until the case can be decided on the merits.  *Kalbfleisch v. Columbia Community Unit School District Unit No. 4*, 396 Ill. App. 3d 1105, 1112 (2009).  Thus, the plaintiff need not carry the same burden of proof that is required to support the ultimate issue.  *Stenstrom Petroleum Services Group, Inc. v. Mesch*, 375 Ill. App. 3d 1077, 1089 (2007).  The proof required for issuance of a preliminary injunction requires a plaintiff to show that a "fair question" exists regarding the claimed right, and that the court should preserve the status quo until the case can be decided on the merits.  *Lifetec*, 377 Ill. App. 3d at 268.

¶ 10    A preliminary injunction requires a showing by a preponderance of the evidence that the plaintiff (1) has a clearly ascertainable right needing protection, (2) will suffer irreparable harm without protection, (3) has no adequate remedy at law, and (4) is likely to succeed on the merits.  *Lifetec*, 377 Ill. App. 3d at 268.  The circuit court must also consider whether the benefits of granting the injunction exceed any injury to the defendant.  *Lifetec*, 377 Ill. App. 3d at 268.  The plaintiff need only make a *prima facie* showing of evidence on the requisite elements to obtain injunctive relief.  *Prairie Eye Center, Ltd. v. Butler*, 305 Ill. App. 3d 442, 445 (1999).  To establish that it has a clearly

5

ascertainable right in need of protection, and a likelihood of success on the merits, the plaintiff need only raise a fair question as to the existence of the right and lead the court to believe that it will probably be entitled to the relief requested if the proof sustains its allegations. *Stenstrom Petroleum*, 375 Ill. App. 3d at 1089.

¶ 11 In determining whether to grant an injunction enforcing a restrictive covenant in an employment agreement, courts look to whether the covenant is reasonable. *Lifetec*, 377 Ill. App. 3d at 269. In determining whether a restrictive covenant is enforceable, courts must determine whether the terms of the agreement are reasonable and necessary to protect a "legitimate business interest" of the plaintiff. *Lifetec*, 377 Ill. App. 3d at 269. A legitimate business interest is found only where (1) the employee acquired confidential information through his employment with the plaintiff and later attempted to use it for his own gains or (2) by the nature of the plaintiff's business, its customer relationships are near permanent and the employee would not have had contact with the customer absent his employment. *Lifetec*, 377 Ill. App. 3d at 269.

¶ 12 On appeal, Heil first argues that the circuit court erred in finding that Scheffel had a clearly ascertainable right in need of protection because Scheffel had no "legitimate business interest" in the individual investors or their "client information" because these investors were never "clients" of Scheffel. Heil argues that, because only LPL could legally trade securities, the individual investors were actually "clients" of LPL, and not of Scheffel. Heil argues that the client information actually belonged to LPL, not to Scheffel, and that any customer relationships were between LPL and the investors, and not between Scheffel and the investors. Heil argues that, because Scheffel actually had

6

no clients, it can claim no "legitimate business interest" in any client information or any customer relationships. Because Scheffel has no "legitimate business interest" in the client information or customer relationships, it has no clearly ascertainable right in need of protection through a preliminary injunction.

¶ 13   In its order, entered December 17, 2013, the circuit court found that it was not prepared to rule, at the preliminary injunction stage, on the merits of Heil's argument. The court found that the evidence was sufficient at the preliminary injunction stage of the proceeding to allow Scheffel to proceed as the plaintiff and attempt to enforce its employment agreement with Heil. The court concluded that Scheffel's client information which Heil had taken with him to Morgan Stanley did constitute trade secrets. The court also concluded that Scheffel had a near permanent relationship with its individual investors and that Heil would not have had any contact with those individual investors absent his employment with Scheffel such that Scheffel had a protectable interest in enforcing the nonsolicitation clause of the employment agreement.

¶ 14   We cannot conclude that the circuit court abused its discretion in so finding. As we have stated, the standard of review for a preliminary injunction is whether the circuit court abused its discretion in determining that the plaintiff provided *prima facie* evidence to support its claim. *Delta Medical Systems v. Mid-America Medical Systems, Inc.*, 331 Ill. App. 3d 777, 789 (2002). The question before this court on review is whether there was a sufficient showing to sustain the circuit court's order. *Delta Medical*, 331 Ill. App. 3d at 789. Instead of deciding controverted facts on the merits of the case, the reviewing court determines only whether the plaintiff has demonstrated that there is a fair question

7

as to the existence of the claimed rights, that the circumstances lead to a reasonable belief that the plaintiff will probably be entitled to the relief sought, and that the status quo should be preserved until the case can be decided on the merits. *Delta Medical*, 331 Ill. App. 3d at 789. The circuit court did not abuse its discretion in finding that Scheffel had demonstrated that there is a fair question as to the existence of its claimed rights.

¶ 15    Heil next argues that the circuit court erred in holding that the "Protocol for Broker Recruiting" (the Protocol) did not prohibit Scheffel from enforcing the nonsolicitation clause in its employment agreement. The Protocol is a voluntary agreement entered into by registered broker/dealers which allows registered representatives of those broker/dealers to move between firms that have adopted the Protocol, and be free from litigation by the former firm to enforce any restrictive covenant in an employment agreement. While LPL, as a registered broker/dealer, was a signatory to the Protocol, Scheffel was not. Under the Protocol to which LPL was a signatory, when a registered representative left LPL to join another firm that was a signatory to the Protocol, the registered representative could take a list of clients to his new firm and use that list to solicit those clients on behalf of the new firm.

¶ 16    Heil argues that, prior to his resignation from Scheffel, Heil had obtained from LPL a list of the clients he serviced, and it is from this client list that Heil sought to solicit former clients of Scheffel. On appeal, Heil argues that Scheffel is barred by the Protocol from enforcing the restrictive covenant in his employment agreement because it did not own the client information which Heil obtained from LPL.

¶ 17    In its order, the circuit court held that Scheffel had raised a fair question, for

8

purposes of a preliminary injunction, that the Protocol did not bar enforcement of the restrictive covenant contained in the employment agreement between Heil and Scheffel because Scheffel was not, and could not be, a signatory to the Protocol. The court pointed out that even the Financial Industry Regulatory Authority (FINRA) recognizes the enforceability of restrictive covenants in employment contracts involving nonsignatories to the Protocol. See *Fidelity Brokerage Services LLC v. Morgan Stanley Smith Barney LLC*, FINRA No. 11-03937 (2012) (Kinsellagh, Arb.). Indeed, Heil's expert witness testified that nothing in the Protocol prohibits employers like Scheffel from having nonsolicitation covenants in their employment agreements.

¶ 18    Heil repeats his argument that because Scheffel was not a registered broker/dealer it could not provide financial services and did not have clients which Heil could solicit, nor could it own client information. Heil argues that as the registered broker/dealer, only LPL could have clients and own client information. Because LPL was a signatory to the Protocol, Heil was free to take his client list with him when he left and to solicit those clients on behalf of his new employer.

¶ 19    As we have already pointed out, the circuit court held that it was not prepared to decide this issue at the preliminary injunction stage, a point in the proceedings at which it is not appropriate to determined controverted facts or decide the merits of the case. The circuit court found that the evidence was sufficient to allow Scheffel to proceed on the preliminary injunction. The circuit court did not abuse its discretion in so deciding.

¶ 20    Heil next argues that the circuit court erred in finding that the issuance of the preliminary injunction did not impose an undue hardship on Heil. Heil correctly points

out that in order to be entitled to a preliminary injunction, the circuit court must conclude that the balance of the hardships to the parties supports the injunctive relief requested. *Delta Medical Systems v. Mid-America Medical Systems, Inc.*, 331 Ill. App. 3d 777, 789 (2002). Heil testified at the hearing on the motion for a preliminary injunction that the entry of the preliminary injunction would permanently damage his career, with the possibility that he could lose millions of dollars in compensation.

¶ 21 In its order granting the preliminary injunction, the circuit court found that the potential economic harm Heil might suffer is not so large as to prevent enforcement of the restrictive covenant in the employment agreement. The injunction would not preclude Heil from earning a living and providing for his family during the pendency of the action. The injunction did not prevent Heil from working; it only prevented him from soliciting clients of Scheffel. The court pointed out that the injunction was only in effect pending the ultimate outcome of the case.

¶ 22 We find the preliminary injunction to be carefully drafted so as to limit any hardship on Heil. It prevents Heil only from using or disclosing any of Scheffel's confidential information and from having any direct contact or personal solicitation of Scheffel's clients or customers. Heil can continue to work as a financial advisor within the same geographical area as Scheffel, and may continue to service existing clients and solicit new ones (other than those belonging to Scheffel). We cannot conclude that the circuit court abused its discretion in balancing the hardships on the parties and finding that they supported the injunctive relief requested.

¶ 23 Finally, Heil argues that the circuit court erred in finding that Scheffel had no

10

adequate remedy at law and would suffer irreparable harm if the preliminary injunction were not granted. He asserts that Scheffel presented no evidence that its business would be harmed due to Heil's actions, that it could not finance a lawsuit against Heil, that it could not obtain damages from Heil, or that the amount of its damages was difficult to calculate. Furthermore, he argues, the employment agreement contained a liquidated damages clause, showing that Scheffel has an adequate remedy at law and that any harm to be suffered is not irreparable.

¶ 24    Given Scheffel's protectable interest in its clients, with whom it apparently had established near permanent relationships, irreparable injury caused by Heil's solicitation of those clients is presumed. See *Clifton, Gunderson & Co. v. Richter*, 158 Ill. App. 3d 789, 792 (1987). Furthermore, where with each passing day Heil's solicitation of Scheffel's clients further erodes Scheffel's client base and profit, the injury is ongoing and great. *Richter*, 158 Ill. App. 3d at 792-93. The liquidated damages provision in the employment agreement is not a bar to injunctive enforcement of the nonsolicitation clause; the employment agreement contemplates injunctive relief to prevent ongoing violations as well as damages for past violations. *Richter*, 158 Ill. App. 3d at 793.

¶ 25    The circuit court did not abuse its discretion in determining that Scheffel had no adequate remedy at law and would suffer irreparable harm in the absence of a preliminary injunction.

¶ 26    For the foregoing reasons, we affirm the preliminary injunction order entered by the circuit court of Madison County.

11

¶ 27    Affirmed.

2014 IL App (5th) 130600

NO. 5-13-0600

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

SCHEFFEL FINANCIAL SERVICES, INC.,        )     Appeal from the
                                                                 )     Circuit Court of

       Plaintiff-Appellee,                  )     Madison County.
                                                                  )

v.                                                       )     No. 13-L-1488
                                                                 )

STEPHEN J. HEIL,                         )     Honorable
                                                                 )     Barbara L. Crowder,

       Defendant-Appellant.               )     Judge, presiding.

_____

**Opinion Filed:**          August 22, 2014

_____

**Justices:**        Honorable Thomas M. Welch, P.J.

                        Honorable Judy L. Cates, J., and
                        Honorable S. Gene Schwarm, J.,
                        Concur

_____

**Attorneys**      Craig L. Unrath, Heyl, Royster, Voelker & Allen, Bank One Building,
**for**           Suite 600, 124 S.W. Adams Street, Peoria, IL 61602; Douglas R. Heise,
**Appellant**    Heyl, Royster, Voelker & Allen, 105 West Vandalia, Suite 100,
                    Edwardsville, IL 62025; Joseph B. Alonso, Daniel H. Wirth, Gregory,
                    Doyle, Calhoun & Rogers, LLC, 49 Atlanta Street, Marietta, GA 30060

_____

**Attorneys**      A. Courtney Cox, Thomas E. Berry, Sandberg, Phoenix &
**for**           von Gontard, P.C., 2015 West Main Street, Suite 111, Carbondale,
**Appellee**     IL 62901

_____