**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2019 IL App (3d) 190147-U

Order filed November 8, 2019

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2019

| | | |
|---|---|---|
| LEDBETTER TRUCKING & EXCAVATING, INC., an Illinois Corporation, | ) ) ) | Appeal from the Circuit Court of the 14th Judicial Circuit, Rock Island County, Illinois. |
|     Plaintiff-Counterdefendant and     Appellant, | ) ) ) | |
|     v. | ) ) | |
| MILLER'S CLASSIC CARPET, INC., an Illinois Corporation, d/b/a MILLER'S HAULING; CRAIG MILLER, Individually; JAMIE C. KLARKOWSKI, Individually, and d/b/a KLARKOWSKI CONCRETE, | ) ) ) ) ) ) | |
|     Defendants, | ) ) | |
|     and | ) ) ) | Appeal No. 3-19-0147 Circuit No. 17-CH-329 |
| BRIAN C. FURR, Individually, and d/b/a FURRS HAULING & EXCAVATING; CHRISTOPHER I. REYNOLDS, Individually, and d/b/a FURRS HAULING & EXCAVATING; CHRIS'S CONCRETE SERVICE, LLC, d/b/a FURRS HAULING & EXCAVATING, | ) ) ) ) ) ) ) ) | |
|     Defendants-Counterplaintiffs | ) ) | |
| (Jamie C. Klarkowski, Individually, and d/b/a Klarkowski Concrete; Brian C. Furr, | ) ) | |

Individually, and d/b/a Furrs Hauling & )
Excavating; Christopher I. Reynolds, )
Individually, and d/b/a Furrs Hauling & )
Excavating; and Chris's Concrete Service, LLC, )
d/b/a Furrs Hauling & Excavating, )
 ) Honorable Gregory G. Chickris,
  Defendants-Appellees). ) Judge, Presiding.
_____

PRESIDING JUSTICE SCHMIDT delivered the judgment of the court.
Justices Carter and McDade concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The circuit court did not abuse its discretion by denying plaintiff's motion for a preliminary injunction after finding plaintiff failed to establish all four of the prerequisite elements.

¶ 2    Plaintiff, Ledbetter Trucking and Excavating, Inc. (Ledbetter), entered an asset purchase agreement (APA) with defendant, Miller's Classic Carpet, Inc., d/b/a Miller's Hauling (Miller). Part of the APA included a list of Miller's current clients. Ledbetter alleges codefendant and Miller's former employee, Brian Furr, d/b/a Furrs Hauling and Excavating (Furr defendants), misappropriated the client list and solicited the customers in order to open a rival business with codefendant Chris Reynolds, a/k/a Chris's Concrete Service, LLC, d/b/a Furrs Hauling and Excavating (Furr defendants). Ledbetter also contends codefendant Jamie Klarkowski, d/b/a Klarkowski Concrete (Klarkowski), wrongfully obtained a copy of the snowplowing portion of the client list. Miller allegedly introduced Klarkowski to clients with whom Klarkowski established business relationships. Ledbetter filed a motion for a preliminary injunction for a threatened violation of the Illinois Trade Secrets Act (Act) (765 ILCS 1065/1-1 *et seq.* (West 2016)) against Furr, Reynolds, and Klarkowski. The court denied the motion, finding Ledbetter did not establish irreparable injury in the absence of an injunction or a likelihood of success on the merits. We affirm.

¶ 3                                    I. FACTS

¶ 4         In October 2017, Ledbetter entered into an APA with Miller to purchase all assets of Miller's Hauling. In November 2017, Ledbetter initiated this action by filing a complaint and jury demand against Miller. In January 2018, the circuit court entered a preliminary injunction against Miller. In February 2018, Ledbetter filed an amended complaint joining Furr defendants and Klarkowski, alleging they were also interfering with its ability to do business in contravention of the goodwill provision of the APA. In March 2018, the circuit court entered a temporary restraining order (TRO) against Furr defendants and Klarkowski. On March 26, 2018, a panel of this court issued a mandate overturning the TRO. On remand, the circuit court heard arguments on Ledbetter's motion for a preliminary injunction in January through March 2019. The parties produced the following evidence.

¶ 5         Ledbetter had an established business before the APA but did not do any hauling or excavating work. Miller understood this sale to consist solely of the assets of its business, not the business itself; Ledbetter did not elect to continue under the name "Miller's Hauling." Ledbetter paid 7% of the purchase price in exchange for the promise of goodwill and lists of customers who had previously used Miller's Hauling for hauling, excavating, and snowplowing. The APA included nondisclosure and noncompete provisions with regard to Miller. As part of the APA, Ledbetter purchased Miller's cell phone number. No other employee of Miller's Hauling, specifically Furr, signed the APA. Furr did not sign a noncompetition, nonsolicitation, or restrictive covenant agreement with Ledbetter.

¶ 6         The main issue stems from what Ledbetter classifies as misappropriation of the client list. The client list consisted of a typed page of Miller's 10 largest accounts that frequently solicited its hauling and excavating services and another page of snowplowing clients. As part of the

APA, Ledbetter purchased rights to Miller's current contractual snowplowing obligations. However, Miller did not have preexisting hauling and excavating contracts.

¶ 7    Ledbetter had a series of verbal agreements with clients regarding hauling services. It was Ledbetter's understanding that businesses which used Miller's services in the past would continue to use Ledbetter's services in the future. However, Ledbetter had no written agreements with any hauling clients.

¶ 8                                    A. Furr Defendants

¶ 9    Brian Furr worked for Miller's Hauling prior to the sale. He managed the day-to-day operations at Miller's Hauling, including dealing directly with customers, scheduling projects, and coordinating schedules, which required him to have access to customers' client information. The phone number that Miller used in its advertisements belonged to Furr's cellular device. As a result of the frequent communications, Furr developed strong relationships with the businesses that solicited Miller's Hauling.

¶ 10    After Ledbetter entered into the APA, Furr became Ledbetter's employee. He continued in the same position. Furr allowed Ledbetter to use his phone number in Ledbetter's advertisements as Miller had. Ledbetter never attempted to purchase Furr's phone number or ask him to delete his saved contacts. Ledbetter conceded Furr had the contact information stored in his phone as a result of his employment with Miller's Hauling and prior to the APA.

¶ 11    Reynolds owns Chris's Concrete Service and used Miller's services prior to the sale. Reynolds knew Ledbetter; the two had a strained relationship and were competitors prior to the APA. Furr and Reynolds became acquainted through Furr's employment at Miller's Hauling.

¶ 12    After the sale, Furr and Reynolds began communicating about the possibility of going into the hauling business together. Furr was not satisfied with his pay or how Ledbetter ran the business. In February 2018, Furr stopped working for Ledbetter. Businesses on the client list contacted Furr about his plans going forward, telling him that should he decide to open his own business, they would use his services. Once Furr and Reynolds decided to open Furr's Hauling and began advertising, businesses started contacting Furr. Some of these businesses were on the client list attached to the APA. Ledbetter agreed the Furr defendants did not interfere with any of his written contracts.

¶ 13                                    B. Klarkowski

¶ 14    Jamie Klarkowski used Miller's services prior to the sale. His name was on the client list. Klarkowski also worked for Miller as an independent contractor providing snowplowing services. Klarkowski knew Miller's clients as a result of this business relationship.

¶ 15    He testified he did not use Ledbetter's services after the APA because Ledbetter raised prices. After the sale, Miller gave Klarkowski a copy of the snowplow portion of the client list. Miller introduced Klarkowski to at least one business on the snowplow list, which, in turn, hired Klarkowski to perform snowplowing services instead of using Ledbetter.

¶ 16    The court ultimately denied Ledbetter's motion for a preliminary injunction. In its oral decision, the court opined that it could not find that Ledbetter had a likelihood of success on the merits based upon the evidence presented. It also cited a lack of irreparable injury.

¶ 17                                    II. ANALYSIS

¶ 18    On appeal, Ledbetter argues the court erred in denying its motion for a preliminary injunction, citing the following observations from the court: (1) a great deal of time elapsed since the initiation of the action and the likelihood of securing the business of customers the

Furr defendants "stole" was low; (2) the customer list was not kept secret; (3) Furr learned of the clients on the client list in the natural course of his employment with Miller's Hauling; (4) "the horse is out of the barn and there is no way to put the horse back into the barn;" (5) Ledbetter does not have a likelihood of success on the merits; (6) "there is no status quo we can go back to;" (7) Ledbetter retains the possibility of presenting evidence as to monetary damages; and (8) no irreparable injury exists. The Furr defendants contend that the court's decision is supported by the applicable law and supporting record. They additionally ask this court to impose sanctions on Ledbetter for filing this appeal.

¶ 19　　　　We note that Klarkowski failed to file a brief in this case. When an appellee fails to file a brief, reviewing courts will decide the merits of the appeal if the record is simple and the errors can be easily decided without the aid of an appellant's brief. *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128 (1976). Our analysis is similar when considering Klarkowski and the Furr defendants. We will, therefore, consider the merits of the appeal with regard to Klarkowski.

¶ 20　　　　A preliminary injunction is an extraordinary remedy meant to preserve the status quo pending a decision on the merits of a cause of action. *Callis, Papa, Jackstadt & Halloran, P.C. v. Norfolk & Western Ry. Co.*, 195 Ill. 2d 356, 365 (2001). A circuit court should only grant a preliminary injunction where "an emergency exists and serious harm would result if the injunction is not issued." *Id.* A party seeking a preliminary injunction must establish four elements in order for a court to grant its motion: (1) a clearly ascertained right in need of protection, (2) an irreparable injury absent the injunction, (3) a lack of adequate remedy at law, and (4) a likelihood of success on the merits. *Mohanty v. St. John Heart Clinic, S.C.*, 225 Ill. 2d 52, 62 (2006). A circuit court must deny a motion for preliminary injunction if the moving

party fails to prove any one of the four elements. *Yellow Cab Co., Inc. v. Production Workers Union of Chicago & Vicinity, Local 707*, 92 Ill. App. 3d 355, 356 (1980). A circuit court's decision to grant or deny a preliminary injunction will not be disturbed absent an abuse of discretion. *Mohanty*, 225 Ill. 2d at 80. A circuit court abuses its discretion when no reasonable person would adopt its view. *Clinton Landfill, Inc. v. Mahomet Valley Water Authority*, 406 Ill. App. 3d 374, 378 (2010). We, as the reviewing court, will not decide controverted facts or the merits of the case. *Scheffel Financial Services, Inc. v. Heil*, 2014 IL App (5th) 130600, ¶ 9.

¶ 21    At the outset, we reiterate the principle that appellate courts review the lower court's judgment, not its reasoning; we may affirm on any grounds apparent in the record irrespective of the lower court's reasoning. *Hancock v. Village of Itasca*, 2016 IL App (2d) 150677, ¶ 11. "We ordinarily presume that the trial judge knows and follows the law." *People v. Gaultney*, 174 Ill. 2d 410, 420 (1996). Ledbetter argues that the court applied the incorrect legal standard and highlights specific phrases in the court's oral pronouncement to belabor its point. When reading the record, it is apparent the court explained its reasoning by using common phrases but began by stating the applicable, and correct, legal standard. Therefore, we will not conduct a *de novo* review of each phrase from the court's oral decision with which Ledbetter takes issue. Instead, we must determine whether the court abused its discretion based on the entirety of the record on appeal. We are tasked with determining whether Ledbetter made a case for all the elements necessary to issue a preliminary injunction. See *Mohanty*, 225 Ill. 2d at 60. The moving party must raise a "fair question" as to each required element in order to obtain an injunction. *Clinton Landfill*, 406 Ill. App. 3d at 378.

¶ 22                      A. Right in Need of Protection as to Furr Defendants

¶ 23   Ledbetter correctly points out that the court did not explicitly address whether Ledbetter had a clearly ascertained right in need of protection. However, Ledbetter and the Furr defendants state their case on this point. We will determine whether the record supports a finding of a right in need of protection.

¶ 24   Ledbetter frames this issue in regard to the client list and whether it was a trade secret within the meaning of the Act. It contends that the client list was sufficiently secret to derive economic value from its contents. The Act defines a trade secret as:

> "[I]nformation, including but not limited to *** list of actual or potential customers or suppliers, that:
>
> (1) is sufficiently secret to derive economic value, actual or potential, from not being generally known to other persons who can obtain economic value from its disclosure or use; and
>
> (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy or confidentiality." 765 ILCS 1065/2(d) (West 2016).

¶ 25   The Furr defendants simply reply that the list never was a secret. Whether the client list was a trade secret within the meaning of the Act is critical to a finding of a right in need of protection. Under Illinois law, an employer's trade secrets are a protectable interest. See *Liebert Corp. v. Mazur*, 357 Ill. App. 3d 265, 276 (2005).

¶ 26   Unfortunately, Ledbetter provided this court with no relevant case law to support its position that the client list is a trade secret within the meaning of the Act. This court is "entitled to have issues clearly defined with pertinent authority cited and cohesive arguments presented [citation], and it is not a repository into which an appellant may foist the burden of argument

- 8 -

and research." *Obert v. Saville*, 253 Ill. App. 3d 677, 682 (1993). Normally, we would declare this argument forfeited but choose to reach the merits of this argument, as the merits can be readily ascertained from the record on appeal. *Twardowski v. Holiday Hospitality Franchising, Inc.*, 321 Ill. App. 3d 509, 511 (2001).

¶ 27 To be a trade secret, Ledbetter had to show that the information was sufficiently secret to give it a competitive advantage. *Liebert*, 357 Ill. App. 3d at 276. Courts consider the six following common-law factors in this analysis:

> "(1) the extent to which the information is known outside the plaintiff's business; (2) the extent to which it is known by employees and others involved in the plaintiff's business; (3) the extent of measures taken by the plaintiff to guard the secrecy of the information; (4) the value of the information to the plaintiff and to the plaintiff's competitors; (5) the amount of effort or money expended by the plaintiff in developing the information; and (6) the ease or difficulty with which the information could be properly acquired or duplicated by others." *Stenstrom Petroleum Services Group, Inc. v. Mesch*, 375 Ill. App. 3d 1077, 1090 (2007).

¶ 28 Information that is generally known or understood within an industry, even if not known to the public at large, does not qualify as a trade secret. *Learning Curve Toys, Inc. v. PlayWood Toys, Inc.*, 342 F.3d 714, 722 (7th Cir. 2003). However, where an employer has invested substantial time, money, and effort to obtain a secret advantage, the secret should be protected from an employee who obtains it through improper means. *Delta Medical Systems v. Mid-America Medical Systems, Inc.*, 331 Ill. App. 3d 777, 791 (2002). "Nevertheless, in a competitive market, an employee must be entitled to utilize the general knowledge and skills

acquired through experience in pursuing his chosen occupation." *Id.* Where information can be readily duplicated without considerable time, effort, or expense, it is not a trade secret. *Id.* at 792.

¶ 29 Applying the six principles and analysis described above, we find that the client list did not rise to the level of a trade secret. The client list consisted of businesses' names and phone numbers. Any of these phone numbers could have been obtained through the phone book. Furr knew the contacts better than anyone did; he maintained the customer relationships. Ledbetter was aware that businesses corresponded with Furr. In fact, Ledbetter continued to use Furr's phone number in advertisements after the APA. It did not purchase Furr's number, ask Furr to delete the contact information from his phone, or insist that Furr sign a noncompete agreement prior to the sale. Ledbetter contends that the lists are extremely valuable to its business but the contact information alone, without the personal relationships Furr developed with the businesses, has little worth. All parties agree that 7% of the purchase price went toward Miller's goodwill and the client list. The client list could be easily duplicated by any of Miller's former employees. Its contents require knowledge as to who frequently solicited Miller's services and how to use a phone book.

¶ 30 Ledbetter argues it should prevail because it has invested substantial money and effort to obtain a competitive advantage through use of the client list. See *Delta Medical Systems*, 331 Ill. App. 3d at 791. While true, this is not an absolute principle of law; it presents with exceptions. Its protections come with the caveat that an employee must have used improper means to obtain it. It likewise cannot be easily duplicated. See *id.* at 792. Here, Ledbetter presented no evidence that the Furr defendants had deviously obtained the information. Ledbetter stated it kept the client list in a safe. Ledbetter does not argue that the Furr defendants

- 10 -

expended great amounts of time and energy in compiling the information. Instead, it concedes that Furr had the information stored on his cell phone before the APA occurred. Ledbetter did not make reasonable efforts to protect that information at any point. There is ample evidence upon which the circuit court could have relied upon to find the client list did not constitute a trade secret. Accordingly, the circuit court did not err in denying Ledbetter injunctive relief because it failed to make a *prima facie* case that it had a right in need of protection under the Act.

¶ 31    As described above, a circuit court must deny a motion for preliminary injunction if the moving party fails to prove any one of the four elements. *Yellow Cab*, 92 Ill. App. 3d at 356. Thus, we need not address the remaining factors.

¶ 32                          B. Right in Need of Protection as to Klarkowski

¶ 33    Ledbetter's argument that the list of snowplowing clients was a trade secret fails for the same reasons as the hauling and excavating client list. Klarkowski worked as a private contractor providing snowplow services for Miller prior to the sale. Klarkowski knew who solicited Miller's services because Miller contracted with Klarkowski to perform the snow removal. This court will not comment on the appropriateness of Miller introducing Klarkowski to customers on the list after signing the APA because that does not impact our analysis of whether the list was a trade secret. For valuable information to constitute a trade secret, there must be some evidence of wrongful obtainment. There is none here. Miller gave Klarkowski the snowplow list. This appeal does not address the propriety of Miller's actions but, rather, focuses on Klarkowski. There is no evidence on the record of improper actions regarding Klarkowski and the snowplow list. The circuit court did not abuse its discretion in denying Ledbetter injunctive relief as to Klarkowski.

¶ 34                                    C. Sanctions

¶ 35        The Furr defendants ask this court to impose attorney fees and costs on Ledbetter for its

alleged violation of Illinois Supreme Court Rule 375(b) (eff. Feb. 1, 1994). The decision

whether to impose sanctions is a matter left entirely to the reviewing court. *Parkway Bank &*

*Trust Co. v. Korzen*, 2013 IL App (1st) 130380, ¶ 87. We decline to exercise this discretion.

¶ 36                                    III. CONCLUSION

¶ 37        For the foregoing reasons, we affirm the judgment of the circuit court of Rock Island

County.

¶ 38        Affirmed.